THE STATE OF OHIO, APPELLEE, *v.* GERALDO, APPELLANT.

(No. 80-1677—Decided December 16, 1981.)

*Mr. Anthony G. Pizza,* prosecuting attorney, and *Mr. James D. Bates,* for appellee.

*Messrs. Hayward, Cooper, Straub, Walinski & Cramer, Mr. Richard S. Walinski, Mr. Robert Z. Kaplan* and *Mr. Jon D. Richardson,* for appellant.

SWEENEY, J.   The question presented in the instant appeal is whether the federal constitution or state law requires the suppression of evidence obtained by the warrantless recording of a telephone conversation between a consenting police informant and a non-consenting defendant.

## I.

Appellant seeks to avoid the rule expressed in the plurality opinion of the United States Supreme Court in *United States* v. *White* (1971), 401 U. S. 745, and subsequently ratified by a majority of that court in *United States* v. *Caceres* (1979), 440 U. S. 741, by advancing a theory which posits that the scope of

Fourth Amendment rights is to be ascertained with reference to state law.[1] In *White,* which followed the seminal wiretaping case of *Katz* v. *United States* (1967), 389 U. S. 347, Justice White, writing for three other members of the court, stated the following, at pages 751-752:

"Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. *Hoffa* v. *United States,* 385 U. S., at 300-303. For constitutional purposes, no different result is required if the agent, instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez* v. *United States, supra,* [ (1963), 373 U. S. 427], (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. *On Lee* v. *United States, supra* [ (1952), 343 U. S. 747]. If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

"Our problem is not what the privacy expectations of particular defendants in particular situations may be or the extent to which they may in fact have relied on the discretion of their companions. Very probably, individual defendants neither know nor suspect that their colleagues have gone or will go to the police or are carrying recorders or transmitters. Otherwise, conversation would cease and our problem with these encounters would be nonexistent or far different from those now

---

[1] The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

before us. Our problem,\*\*\*is what expectations of privacy are constitutionally 'justifiable' — what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by *Hoffa* and\*\*\*[*Lewis* v. *United States* (1966), 385 U. S. 206]. If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case. See *Lopez* v. *United States,* 373 U. S. 427 (1963)."[2]

Notwithstanding *White* and the clear statement in *United States* v. *Caceres, supra,* at page 744, that "[n]either the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants,"[3] appellant contends that "[w]here a person has a subjective expectation of privacy in an area that the state has rendered private as a matter of state law, the person has a reasonable and legitimate expectation of privacy entitled to Fourth Amendment protection."

The essence of appellant's argument is that inasmuch as the privacy rights guaranteed by the Fourth Amendment are but a subset of those liberty interests protected by the Due Process Clause of the Fourteenth Amendment, it is entirely appropriate, and indeed necessary, for a court to look to state law to determine the scope of constitutionally protected

---

[2] Justice White, at page 753, also noted the probative value of such recorded evidence:

"\*\*\*An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat or injury will suppress unfavorable evidence and less chance that cross-examination will confound the testimony."

[3] Federal legislation, namely, Title III of the Omnibus Crime and Safe Streets Act of 1968, and more specifically, Section 2511 (2)(c), Title 18, U. S. Code, permits a police officer to intercept a telephone conversation if one of the participants consents thereto.

Fourth Amendment interests in precisely the same way courts refer to state law to assess claims alleging that protected interests have been abridged in violation of the Fourteenth Amendment. See, *e.g., Bd. of Regents* v. *Roth* (1972), 408 U. S. 564. Moreover, according to appellant, the court in fn. 1 of *White* left open the question of whether state law can create reasonable expectations of privacy entitled to constitutional protection.[4] The footnote states, at page 747, in relevant part: "***[W]e do not consider White's claim that the Government's actions violated state law."

The above language provides the underpinning for appellant's elaborate Fourth Amendment theory and, necessarily, he ascribes to it great significance. As we read it, however, fn. 1 in *White* merely stands for the oft-stated proposition that "a State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards." (Emphasis in original.) *Oregon* v. *Hass* (1975), 420 U. S. 714, at page 719. See, generally, Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489. We glean no intent on the part of the United States Supreme Court in *White* to constitutionalize state law in order to determine what is reasonable for purposes of the Fourth Amendment. Thus, as a matter of federal constitutional law, after the decision in *White* it is irrelevant that the police conduct in the instant case may not have comported with R. C. 4931.28 (wiretapping prohibited), or Ohio Bell Telephone Company Exchange Tariff Section 20, Order No. 75-725-TP-ATA (1976) (beeper required when recording), which comprise the specific state law bases upon which appellant relies, so long as the warrantless recording of the telephone conversation was undertaken with the voluntary consent of one of the participants thereto. We hold, on the authority of *White,* that the warrantless recording of a telephone conversation between a consenting police informant and a non-consenting defendant does not offend the Fourth Amendment to the United States Constitution.

---

[4] For a more complete explication of appellant's theory, see Walinski & Tucker, Expectations of Privacy: Fourth Amendment Legitimacy through State Law, 16 Harv. Civ. Rts. Civ. Lib. L. Rev. 1.

## II.

We now consider whether state law, be it constitutional, statutory, or administrative, requires the suppression of the evidence obtained by the warrantless recording the Geraldo-Thom telephone conversation.

### II A.

Section 14, Article I, of the Ohio Constitution, which is virtually identical to the Fourth Amendment to the federal constitution, provides that "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

The question is whether this court should imbue the state constitutional provisions regarding search and seizure with a more stringent standard of reasonableness than is required by the cognate federal constitutional provisions. Although "a State is free *as a matter of its own law* to impose greater restrictions on police activity than***[the United States Supreme Court] holds to be necessary upon federal constitutional standards," (emphasis in original) *Oregon* v. *Hass, supra,* we are disinclined to impose greater restrictions in the absence of explicit state constitutional guarantees protecting against invasions of privacy that clearly transcend the Fourth Amendment.[5] The Court of Appeals noted that "[t]wo states

---

[5] The Michigan Supreme Court, for example, interpreted Section 11, Article I, of the Michigan Constitution, which, like Section 14, Article I, of the Ohio Constitution, follows the language of the Fourth Amendment almost verbatim, to require a warrant when a consenting participant transmits a conversation electronically to a third party. *People* v. *Beavers* (1975), 393 Mich. 554, 227 N.W. 2d 511. The Michigan court, at page 565, stated it was "persuaded by the logic of Justice Harlan," who dissented in *White.* Justice Harlan's dissent expressed this view at 401 U. S., pages 787-789:

"The impact of the practice of third-party bugging, must, I think, be considered such as to undermine that confidence and sense of security in dealing with one another that is characteristic of individual relationships between citizens in a free society. It goes beyond the impact on privacy occasioned by the ordinary type of 'informer' investigation upheld in *Lewis* and *Hoffa.* The argument of the plurality opinion, to the effect that it is irrelevant whether secrets are revealed by the mere tattletale or the transistor, ignores the differences occasioned by third-party monitoring and recording

have found that a warrant requirement does exist based upon explicit provisions in their state constitutions which guarantee state citizens the right to privacy." See *State* v. *Brackman* (Mont. 1978), 582 P. 2d 1216; *State* v. *Glass* (Alaska, 1978), 583 P. 2d 872. The court below went on to state, however, that "Ohio's constitution contains no such [privacy] provision." It is our opinion that the reach of Section 14, Article I, of the Ohio Constitution with respect to the warrantless monitoring of a consenting informant's telephone conversation is coextensive with that of the Fourth Amendment to the United States Constitution. As a consequence thereof, appellant's failure to prove a violation of the Fourth Amendment dictates the conclusion that his rights under Section 14, Article I, of the Ohio Constitution have not been violated either.

With respect to Ohio statutory law, appellant argues that "Ohio Revised Code § 4931.28 expressly and categorically prohibits telephone wiretapping." R. C. 4931.28 provides:

"No person shall willfully and maliciously cut, break, tap,

---

which insures full and accurate disclosure of all that is said, free of the possibility of error and oversight that inheres in human reporting.

"Authority is hardly required to support the proposition that words would be measured a good deal more carefully and communication inhibited if one suspected his conversations were being transmitted and transcribed. Were third-party bugging a prevalent practice, it might well smother that spontaneity—reflected in frivolous, impetuous, sacrilegious, and defiant discourse—that liberates daily life. Much offhand exchange is easily forgotten and one may count on the obscurity of his remarks, protected by the very fact of a limited audience, and the likelihood that the listener will either overlook or forget what is said, as well as the listener's inability to reformulate a conversation without having to contend with a documented record. All these values are sacrificed by a rule of law that permits official monitoring of private discourse limited only by the need to locate a willing assistant."

We are sensitive to Justice Harlan's concerns as set forth above. Moreover, we recognize, as did the Michigan court in *Beavers,* at page 563, that "***[w]ith the advent of increasingly sophisticated electronic surveillance equipment, the evolving body of law which seeks to reconcile the need for effective police investigative practices in combatting criminal activity with the ominous spectre of the Orwellian Big Brother is fraught with complexities."

Nevertheless, while we acknowledge the legitimacy of the misgivings expressed by Justice Harlan in *White* and the Michigan court in *Beavers,* as well as the general desirability of securing a warrant, we adhere to the rule expressed in *White,* at page 752, that "[i]f the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when the same agent has recorded or transmitted the conversation which are later offered in evidence to prove the State's case."

or make connection with a telegraph or telephone wire or read or copy in an unauthorized manner, a telegraphic message or communication from or upon a telegraph or telephone line, wire, or cable, so cut or tapped, or make unauthorized use thereof, or willfully and maliciously prevent, obstruct, or delay the sending, conveyance, or delivery of an authorized telegraphic message or communication by or through a line, cable, or wire, under the control of a telegraph or telephone company."[6]

The Court of Appeals majority did not find a violation of R. C. 4931.28 because, in its view, "the Ohio legislature meant for R. C. 4931.28 to be read *in pari materia* with the consent provision of R. C. 2933.58." R. C. 2933.58 provides:

"(A) Except as provided in this section, or as permitted under the laws of the United States, no person shall willfully, surreptitiously, and by means of any device listen to, transmit, amplify, or record a private oral communication carried on in circumstances which reasonably indicate that the parties thereto desire it to be confined to them, and no person shall willfully disclose or willfully use or attempt to use any information, knowing or having reasonable cause to believe such information was obtained in violation of this section.

"Whoever violates this section shall be fined not more than one thousand dollars or imprisoned not less than one nor more than three years, or both.

"(B) *This section does not apply to communications by or through a line, cable, or wire under the control of a telegraph or telephone company,* or to communications in which at least one party thereto, in order to prevent a crime or bring an offender to justice, has consented in advance to such communications being listened to, transmitted, amplified, or recorded, or to communications carried on publicly or under circumstances in which the parties thereto might reasonably expect such communications to be listened to, transmitted, amplified, or recorded." (Emphasis added.)

The Court of Appeals erred in construing R. C. 4931.28 *in*

---

[6] R. C. 4931.99(E) provides:

"Whoever violates section 4931.28 of the Revised Code shall be fined not less than fifty nor more than one thousand dollars or imprisoned not less than one nor more than three years or both."

*pari materia* with R. C. 2933.58 because R. C. 2933.58, by its own terms, "does not apply to communications by or through a line***under the control of a***telephone company" irrespective of any consent obtained pursuant to R. C. 2933.58(A).

Appellant makes much of the fact that the General Assembly has twice rejected amendments to R. C. 4931.28 that would have added a consent exception, analogous to the consent exception contained in R. C. 2933.58.[7] Judge Connors, dissenting below, was of the opinion that the General Assembly's refusal to enact the proposed amendments to R. C. 4931.28 "is at least some indication that the state intended greater protection for its citizens under state law than the federal government does under federal law." This may well be the case. Even if we assume, however, that the actions of Thom and the sergeant fell afoul of those authorized under R. C. 4931.28, the question remains whether this statutory violation provides a sufficient basis to invoke the exclusionary rule and to suppress the controverted recordings.

It is clear that the General Assembly chose not to enact a consent exception to R. C. 4931.28. It is also clear that the General Assembly chose not to enact a statutory exclusionary rule that would come into play when evidence is obtained in violation of R. C. 4931.28. Several states have enacted statutes governing the use of electronic surveillance that incorporate explicit provisions limiting or prohibiting the use of evidence obtained in contravention of the electronic surveillance laws.[8] For cases interpreting these statutes, see, *e.g., State* v. *Wanrow* (1977), 88 Wash. 2d 221, 559 P. 2d 548; *State* v. *Ayres* (1978), 118 N.H. 90, 383 A. 2d 87; *State, ex rel. Arnold,* v. *County Court of Rock County* (1971), 51 Wis. 2d 434, 187 N.W. 2d 354. As the Court of Appeals stated, however, "Ohio has no such explicit state statutes which govern electronic surveillance."

Moreover, notwithstanding the fact that a violation of

---

[7] See, H. B. No. 956, 108th General Assembly; H. B. No. 1279, 112th General Assembly.

[8] These statutes are collected in Fishman, Wiretapping and Eavesdropping, Section 8, and accompanying notes at pages 13-15, and in Cum. Supp. at pages 23-24. See, also, Carr, The Law of Electronic Surveillance, Section 3.05[3], at pages 93-94, and Supp. at pages 21-22.

R. C. 4931.28 may give rise to criminal penalties or as one Court of Appeals has ruled, a private action in tort, see *LeCrone* v. *Ohio Bell Tel. Co.* (1961), 114 Ohio App. 299, approved in *LeCrone* v. *Ohio Bell Tel. Co.* (1963), 120 Ohio App. 129, the rule in this state is that "***the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232, 235. See, also, *State* v. *Unger* (1981), 67 Ohio St. 2d 65, 70. We see no reason to depart from the aforestated rule and, accordingly, we refuse to constitutionalize R. C. 4931.28. Nor, under the guise of construing the statute, do we choose to write into R. C. 4931.28 a provision excluding probative evidence obtained in violation thereof.

Our discussion regarding the effect of a statutory violation on the admissibility of evidence applies *a fortiori* to appellant's contentions respecting the alleged breach of Ohio Bell Telephone Company General Exchange Tariff, Section 20, Order No. 75-725-TP-ATA, which requires in subsection II B 3 a, "a distinctive signal that is repeated at intervals of approximately fifteen seconds when the recording equipment is in use." In short, the telephone tariff creates no constitutional right to a "beep tone."

For the reasons hereinbefore stated, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.