OPINION
{¶ 1} William Hennis is appealing the judgment of the Clark County Common Pleas Court, which found him guilty of five counts of gross sexual imposition and four counts of sexual battery. Hennis is also appealing the sentence he received from the trial court of thirty years.
 {¶ 2} M. moved to Ohio with her biological mother when she was three years old. When M. was approximately 8 years old, she was adopted by K., Hennis's wife. M. came to feel that K. and Hennis were her mother and father. However, shortly after being adopted, Hennis started to molest M. in what began as touching and rubbing and escalated to inserting his finger into her vagina. By the time M. was in high school, the sexual conduct had escalated to Hennis forcing M. to perform oral sex on him and to have sexual intercourse with him. The abuse often lasted for an hour to an hour and a half and would include oral, vaginal, and anal intercourse.
 {¶ 3} M. began to suffer from stomach problems and other ailments, including rectal bleeding. Whenever M. would complain or consider reporting the abuse, Hennis would threaten to kill himself. During the spring of 2002, M. decided that the sexual acts she was being forced to do were wrong. On approximately August 1, 2002, M. informed both her biological mother and K. about the sexual conduct she had been forced to engage in with Hennis.
 {¶ 4} M. and K. contacted the police about the activity. M. allowed the police to place a wire in her car and then went to Hennis's place of work and confronted him. The police recorded their conversation in which M. asked Hennis about the sexual activity between them. At the end of their conversation, the police arrested Hennis.
 {¶ 5} Hennis was charged with five counts of gross sexual imposition and four counts of sexual battery. Subsequently, the indictment was amended to add count six to counts seven and ten, dismissing count six. A jury trial was held on March 14, 2003, and the jury found Hennis guilty of all counts. Hennis was sentenced to ten years in prison for the first five counts of gross sexual imposition. Additionally, Hennis was sentenced to twenty years in prison for the remaining four counts of sexual battery in the third degree. Hennis was also classified as a sexually oriented offender when the State agreed to that designation.
 {¶ 6} Hennis has filed this appeal from his conviction and sentence. Hennis raised the following first four assignments of error in his original brief and raised the last four assignments of error in his supplemental brief:
 {¶ 7} "[1.] Appellant was denied his constitutionally guaranteed right to effective assistance of counsel.
 {¶ 8} "[2.] The trial court erred in failing to suppress evidence gained from an illegal search and seizure.
 {¶ 9} "[3.] The rape shield law was unconstitutionally applied to appellant's case.
 {¶ 10} "[4.] Appellant's convictions were against the sufficiency and/or the manifest weight of the evidence.
 {¶ 11} "[5.] Appellant was denied effective assistance of counsel.
 {¶ 12} "[6.] The trial court erred in imposing a sentence that was excessive and contrary to law.
 {¶ 13} "[7.] Appellant was denied due process and a fair trial due to juror misconduct and the trial court's error in failing to conduct an individual voir dire of jurors.
 {¶ 14} "[8.] The cumulative effect of the errors occurring at trial deprived appellant of a fair trial."
 {¶ 15} Appellant's first and fifth assignment of error:
 {¶ 16} As Hennis raises the claim of ineffective assistance of counsel in both of these assignments of error, we will address them together. Hennis argues that his counsel was ineffective for failing to file a motion to suppress, for failing to object to the admission of certain evidence, for failing to subpoena and review children's services agency's ("CSA") records, for failing to object to the admission of hearsay testimony and a report, and for failing to object to the prosecution leading the witness. We disagree.
 {¶ 17} We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington
(1984), 466 U.S. 668. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See id. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 687. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id. at 689.
 {¶ 18} a. Failing to file a motion to suppress and failing to object to certain evidence.
 {¶ 19} Initially, Hennis argues that his trial counsel was ineffective because he did not file a motion to suppress the audiotape made by police of the conversation between Hennis and M. We disagree.
 {¶ 20} R.C. 2933.52(B)(3) provides that a law enforcement officer may intercept an oral communication without a warrant so long as one of the parties to the communication has consented to the interception. Based onUnited States v. White (1971), 401 U.S. 745, the Ohio Supreme Court held that "[n]either the federal constitution nor state law requires the suppression of evidence obtained by the warrantless recording of a telephone conversation between a consenting police informant and a non-consenting defendant." State v. Geraldo (1981), 68 Ohio St.2d 120.
 {¶ 21} Pursuant to Geraldo, the warrantless taping of the conversation between M. and Hennis did not violate Hennis's right against a warrantless search and seizure. Geraldo and R.C. 2933.52(B)(3) permit the State to tape conversations if one of the parties has given prior consent. In the instant case, M. consented to the recording of the conversation prior to meeting with Hennis and confronting him about the sexual abuse. Since M. had consented to the taping of the conversation, the audiotape was proper and admissible. Thus, Hennis's counsel was not ineffective for failing to attempt to have the audiotape suppressed when there was no basis for suppression of the recording.
 {¶ 22} Hennis also argues his counsel was ineffective for failing to object to the admission of the audiotape. However, as we stated above, the audiotape was properly made and suitable for admission. Therefore, Hennis's counsel was not ineffective for failing to object to it.
 {¶ 23} b. Failing to subpoena the CSA's records
 {¶ 24} Hennis argues that his trial counsel was ineffective for failing to subpoena M.'s records from CSA. We disagree.
 {¶ 25} Although a defendant is permitted to cross-examine a witness as to whether he had previously falsely accused someone of sexual abuse, the defense is limited to intrinsic evidence. State v. Boggs (1992),63 Ohio St.3d 418, 422; State v. Lodge, Mercer App. No. 10-99-04, 1999-Ohio-974. The defense has the burden of establishing that the accusations were totally false and unfounded. Boggs, supra at 423. Moreover, if any sexual activity did occur, whether consensual or not, any further inquiry would be prohibited by the rape shield statute. Id.
 {¶ 26} At the trial court, Hennis's counsel asserted in a proffer that M. had previously received counseling as a result of her allegations that her uncle with whom she lived prior to being adopted by the Hennises had sexually abused her when she lived with him. Hennis now argues that his counsel should have subpoenaed the records from CSA, However, Hennis fails to indicate what the CSA records would have shown. The CSA records would have only been relevant if they had shown that M. had previously falsely accused another of sexual abuse. There is no evidence to indicate that the CSA records would have shown this. Moreover, in order for this assignment of error to be sustained Hennis must show that he would not have been convicted had his trial counsel subpoenaed these records. Even if we were to assume that the records stated that M. had previously falsely accused another of sexual activity, Hennis's counsel would only have been allowed to ask M. if this were true on cross-examination and would have been bound by her answers. Boggs, supra. Moreover, Victoria Mowery, a witness for Hennis, testified that M. had once told her that she had falsely accused her father and foster father of molesting her. (Tr. 349). Therefore, evidence that M. had previously stated that she had falsely accused another of sexual molestation was presented to the jury.
 {¶ 27} As Hennis cannot state what is in the CSA records and evidence that M. may have previously falsely accused another of molestation was before the jury, Hennis cannot establish that the outcome of the trial would have been different if his counsel had requested the CSA records. Further, the evidence against Hennis in this case was strong, including not only M.'s testimony, but an audiotape in which Hennis admits to engaging in sexual conduct with M. and Hennis's testimony wherein he admitted to engaging in sexual activity with M. Moreover, Hennis's claims of innocence relayed in his testimony were found by the court to be "preposterous, to say the least." (Tr. 11, Disposition hearing). Thus, we cannot say that the outcome of Hennis's trial would have been different if his trial counsel had subpoenaed the CSA records or that Hennis received ineffective assistance of counsel because of his failure to do so.
 {¶ 28} c. Failing to object to the admission of hearsay testimony and report
 {¶ 29} Hennis argues that his trial counsel was ineffective because he failed to object to one of the State's witnesses testifying from a medical report written by another. We disagree.
 {¶ 30} Evid. R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In order to be hearsay, that statement's primary value must be in showing the truth of the matter asserted. State v. Durr (1991), 58 Ohio St.3d 86, 91.
 {¶ 31} At Hennis's trial, during K., Hennis's wife's, testimony, Hennis's trial counsel presented a report drafted by the Rocking Horse Center in which it stated that a medical exam of M. did not show any evidence of sexual abuse. During this cross-examination, Hennis's trial counsel had the witness read that M.'s medical exam was normal. Hennis's counsel later had this report admitted into evidence and presented to the jury. The State then called Dr. James Duffee to testify about this medical report that was compiled by his office at the Rocking Horse Center. The medical report was from a medical exam conducted by another physician at the Rocking Horse Center, who was one of Dr. Duffee's subordinates. Dr. Duffee testified that the report had stated that M.'s medical exam was normal, but that he had not conducted the exam. Dr. Duffee continued on to further explain the national four level reporting system for examinations of children who have been abused and the frequency of having actual physical evidence appear in an exam of someone who has been sexually abused.
 {¶ 32} Hennis argues that his counsel was ineffective for failing to object to Dr. Duffee testifying as to what the report stated. However, it was Hennis's counsel who admitted the report because the report showed no physical evidence of sexual abuse, noting instead that the medical exam was normal. This is the portion of Dr. Duffee's testimony which Hennis argues was hearsay. As this would be invited error, Hennis cannot now object to any possible hearsay in the report. Moreover, in order for the failure to object to this report and testimony to amount to ineffective assistance of counsel, Hennis must show that the outcome of the trial would have been different if the alleged hearsay had not been admitted. There is simply no evidence that the outcome of the trial would have been different but for the alleged hearsay portion of Dr. Duffee's testimony. The report only stated that M.'s medical exam was normal and that there was no physical evidence of abuse. This in no way helped to prove the State's case. If anything this evidence tended to bolster Hennis's claim that he had not sexually abused M. over the long period of time she claimed. Hennis's trial counsel was not ineffective because he failed to object to Dr. Duffee reading the report of the medical exam or the admission of the exam itself.
 {¶ 33} d. Failing to object to the prosecution asking leading questions of its witness
 {¶ 34} Hennis argues that his counsel failed to object to leading questions by the prosecutor during M.'s direct testimony. Ohio Rule of Evidence 611(C) states, "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." A leading question is one which "instructs the witness how to answer or puts into his mouth words to be echoed back." State v.D'Ambrosio, 67 Ohio St.3d 185, 190, 1993-Ohio-170. If a question merely directs a witness to matter or topic of testimony, then the question is permissible. Id.
 {¶ 35} In his argument, Hennis fails to point to a single specific example of leading questioning, but rather cites seven different pages of testimony, stating that leading questioning occurred. Having reviewed the cited testimony, we do not agree that the State impermissibly led the witness in this case. All of the questioning in these pages is permissible either as developing M.'s testimony or directing her to a specific topic. We do not find that Hennis received ineffective counsel because he failed to object to the State's questioning of its witness.
 {¶ 36} e. Failing to object to the State's admission of a chart that outlined the charges
 {¶ 37} Finally, Hennis argues that his counsel was ineffective because he failed to object to a chart presented by the State that set forth the charges and the corresponding alleged time frame.
 {¶ 38} All relevant evidence is admissible in a trial. Evid. R. 402. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401.
 {¶ 39} In the instant case, the State presented a chart that listed the nine different charges with which Hennis was indicted, including the time frames that corresponded to the charge. The State presented the chart as demonstrative evidence to aid the jury in relating the evidence presented to the charges in the indictment. We see no error in admitting the chart. However, even if the chart were inadmissible, we see no reason to conclude that the outcome of the trial would have been different if his counsel had objected to the chart. Thus, Hennis was not denied effective assistance of counsel by his counsel's failure to object to it.
 {¶ 40} Hennis was not denied effective assistance of counsel, and his first and fifth assignments of error are without merit and overruled.
 {¶ 41} Appellant's second assignment of error:
 {¶ 42} Hennis argues that the trial court should have suppressed an audiotape made by the State of himself talking to M. We disagree.
 {¶ 43} As we stated in the first assignment of error, pursuant toGeraldo, the police were permitted to record the conversation between M. and Hennis because M. had previously consented to the recording of the conversation. Therefore, the trial court properly admitted the audiotape at trial. Hennis's second assignment of error is without merit and is overruled.
 {¶ 44} Appellant's third assignment of error:
 {¶ 45} Hennis argues that the Rape Shield Law should not have been permitted in this case to prevent him from presenting evidence that M. had previously been molested by her uncle prior to living with Hennis and his wife. We disagree.
 {¶ 46} The Rape Shield Law is codified in R.C. 2907.02(D), providing:
 {¶ 47} "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 48} However, the application of the Rape Shield Law may not "unduly infringe upon a defendant's constitutional rights." In re Michael
(1997), 119 Ohio App.3d 112, 118. In determining whether the Rape Shield Law would unconstitutionally infringe on a defendant's rights, the trial court must balance the interests of the law against the probative value of the evidence excluded by the trial court. State v. Gardner
(1979), 59 Ohio St.2d 14, 17-18. In order for the contested evidence to be admitted, its probative value must be more important than merely to attack the credibility of a witness. Gardner, supra at 17; State v.Guthrie (1996), 86 Ohio App.3d 465, 467.
 {¶ 49} In Michael, supra, this court found it probative that the victims had previously been victimized in a similar manner by another because the victims were of such a young age that their knowledge of sexuality was inappropriate. An expert testified that their advanced knowledge of sexuality indicated they had been sexually abused. Id. Therefore, it was probative in that case for the jury to know that the victim had previously been sexually abused. Id. However, in Michael,
supra, the case was not reversed because the evidence of the prior sexual abuse was presented through the other testimony. Id. In contrast, inGuthrie, supra, the defendant admitted to having some sexual contact with the victim, thus the court found that the victim's history of sexual abuse was not probative because whether or not the victims had previously accused another of sexual abuse did not prove or disprove defendant's guilt of the crime charged. Moreover, the Guthrie court noted that evidence of a victim's past sexual conduct offered to show knowledge of sexual function or that the victim would have knowledge to fabricate a story was not material to a fact at issue in the case and was thus not probative. Id.
 {¶ 50} In the instant case, Hennis's trial counsel proffered that M. had previously accused her uncle, whom she lived with before the Hennises, of sexually molesting her. Hennis's trial counsel sought to elicit evidence regarding this previous sexual abuse, but the State objected arguing that the evidence was barred by the Rape Shield Law. Hennis is now arguing that the evidence of M.'s prior sexual abuse was so probative that the refusal to allow such evidence violated his constitutional rights. However, this case is not similar to Michael in that sense because M. was not of such a young age that her mere knowledge of sexual conduct was evidence that she has been sexually abused. M., who was a senior in high school by the time of trial, testified that she had had sexual intercourse with a boyfriend and had studied sexual education in school. Therefore, unlike Michael, the victim's sexual knowledge was not evidence that she had been sexually abused. Moreover, as in Michael,
evidence that M. had made allegations of sexual abuse towards her uncle prior to living with the Hennises was presented to the jury. Ms. Mowery stated during her testimony that she had believed that M. had previously been molested. (Tr. 349). Further, Hennis testified that M. had made allegations towards her uncle with whom she was living prior to coming to live with the Hennises. (Tr. 305). Thus, the jury was aware that M. had previously made allegations against another man with whom she had lived before being adopted by the Hennises.
 {¶ 51} Moreover, in Guthrie, the court found that the probative value of the information of past sexual abuse was not sufficient to overcome the Rape Shield Law where the defendant admitted to engaging in some inappropriate sexual conduct with the victims. Similarly, Hennis admitted to having sexual intercourse and oral sex with M. on at least one occasion. Thus, M.'s sexual knowledge could have been attributed to that instance and did not necessarily bolster her allegations of repeated sexual abuse. Therefore, M.'s prior sexual abuse had little probative value.
 {¶ 52} In this matter, we see no use for M.'s sexual abuse history other than to impeach her credibility. As the Ohio Supreme Court stated in Gardner, impeaching a witness's credibility is an insufficient reason for admitting evidence that violates the Rape Shield Law. Hennis suggests that the evidence of M.'s previous sexual abuse would be probative to challenge M.'s testimony that she had only had sexual intercourse with one other person, her teenage boyfriend, and that she did not realize the impropriety of the sexual abuse Hennis was committing. However, this suggested purpose only amounts to an attack on M.'s credibility, which is not a sufficiently probative rationale for overcoming the Rape Shield Law. Therefore, we cannot conclude that the trial court erred in its determination to apply the Rape Shield Law to M.'s sexual history. Hennis's third assignment of error is without merit and is overruled.
 {¶ 53} Appellant's sixth assignment of error:
 {¶ 54} Hennis argues that the trial court erred in sentencing him to maximum and consecutive sentences as they were not supported by the record and the court did not make the necessary findings. We disagree as to the imposition of the maximum sentence but agree with Hennis as to the consecutive sentences.
 {¶ 55} The standard of review for an appellate court that is reviewing a sentence imposed by a trial court is described in R.C. 2953.08(G), which states:
 {¶ 56} "(G)(1) If the sentencing court was required to make the findings required by division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code relative to the imposition or modification of the sentence, and if the sentencing court failed to state the required findings on the record, the court hearing an appeal under division (A), (B), or (C) of this section shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings.
 {¶ 57} "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
 {¶ 58} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for re-sentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 59} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 60} "(b) That the sentence is otherwise contrary to law."
 {¶ 61} In determining whether a sentence is "contrary to law", we have defined that term as meaning:
 {¶ 62} "that a sentencing decision manifestly ignores an issue or factor which a statute requires a court to consider. `Where a sentencing court fails to make findings required in R.C. 2929.13 or 2929.14, fails to engage in the seriousness and recidivism analysis required under R.C. 2929.12, or fails to set forth reasons when reasons are required in R.C. 2929.19, the sentence is contrary to law.'" State v. Lofton, Mont App. No. 19852, 2004-Ohio-169 (Citations omitted).
 {¶ 63} In regard to maximum sentences, R.C. 2929.14(C) permits a trial court to impose maximum sentences only upon those offenders who committed the worst form of the offense, offenders who pose the greatest likelihood of committing future crimes, certain major drug offenders, and upon certain repeat violent offenders. R.C. 2929.19(B)(2) requires that the trial court find that one of the scenarios listed in R.C. 2929.14(C) exists and give its reasons for selecting the sentence imposed where the court imposes the maximum prison term allowed.
 {¶ 64} As for consecutive sentences, R.C. 2929.14(E)(4) requires that the trial court find that the consecutive sentence:
 {¶ 65} "is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 66} "* * *
 {¶ 67} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 68} In addressing the imposition of consecutive sentences, we stated in State v. Rothgeb, Champaign App. No. 02CA7, 2003-Ohio-465, that the trial court:
 {¶ 69} "is permitted by R.C. 2929.14(E)(4) to order consecutive sentences only after certain findings are made. By requiring the court to then state the reasons for those findings, R.C. 2929.19(B)(2)(c) obliges the court to not only have reasons but also to state what those reasons are. Further, in stating its reasons the court must connect those reasons to the finding which the reason supports. The court cannot merelypronounce causes that objectively may be its reasons. The court must alsoidentify which of those causes are the particular reasons for each of thestatutory findings the court made." Id. ¶¶ 25 (emphasis in the original).
 {¶ 70} Further, we continued on to explain that the preferred method is for the trial court:
 {¶ 71} "to set out each finding that R.C. 2929.14(E)(4) requires the court to make, and in relation to each the particular reason or reasons for making the finding that R.C. 2929.19(B)(2)(c) contemplates. An unrelated `laundry list' of reasons that doesn't correspond to the statutory findings that court makes presents a difficult puzzle to solve, and requires an appellate court to try to surmise what the trial court's reasons were. Those reasons may have been ample, and on the record correct. The court must nevertheless identify as to each finding what its reason or reasons in fact were if the General Assembly's policy purposes that we discussed in [State v. Shepherd, Montgomery App. No. 19284, 2002-Ohio-6790] are to be met." Id. ¶¶ 27.
 {¶ 72} In addition, the Ohio Supreme Court has recently stated that, "[p]ursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165. Also, the Court stated that when a trial court imposed a nonminimum sentence on a first time offender, it "is required to make its statutorily sanctioned findings at the sentencing hearing." Id.
 {¶ 73} At the disposition hearing in the instant case, the State conceded to classifying Hennis as a sexually oriented offender and he was so classified. The trial court then proceeded on to sentencing Hennis. Imposing the maximum sentence, the trial court sentenced Hennis to two years of incarceration on each of the five charges of gross sexual imposition and five years on each of the four charges of sexual battery. All of these sentences were to be served consecutively to each other such that Hennis was sentenced to thirty years of incarceration.
 {¶ 74} In reaching its conclusion, the trial court stated that it would consider the following circumstances. First, the court noted that the injury of the victim was exacerbated by her young age at the time of the outset of the abuse. Further, the trial court noted M.'s victim impact statement and testimony as evidence that she had suffered serious psychological harm. The court noted that Hennis stood in a parental relationship to M. and utilized that relationship to facilitate the offense. The court did recognize that Hennis did not have a prior criminal record. However, the court also noted that the underlying offense occurred over a span of nearly ten years. The court found that this long span of criminal behavior did indicate a criminal history even if Hennis had no prior convictions. Moreover, the court noted that Hennis did not demonstrate any real remorse during the course of the trial and that Hennis's account of events during his testimony was "preposterous." The trial court then sentenced Hennis to thirty years of incarceration in the manner described above.
 {¶ 75} The court then proceeded on to find that the harm in this case was so great or unusual that a single term would not adequately reflect the seriousness of Hennis's crime nor would multiple terms be disproportionate to Hennis's conduct or to the danger he posed to the community. Further, the court found that more than a single term was necessary to punish Hennis and to protect the public. Moreover, the court found that the shortest sentence would be demeaning to the seriousness of the offense and would not adequately protect the public. The court also stated that it found that Hennis had committed the worst form of the offense. Thus, the trial court imposed the maximum and consecutive sentences.
 {¶ 76} Having reviewed the transcript of the disposition hearing, the trial court did make the required statutory findings that support the sentence. In regard to the maximum sentence, the trial court properly found that Hennis had committed the worst form of the offense and stated that this finding was based upon the consideration of M.'s young age at the time of the abuse and Hennis's position as her adoptive father. Therefore, the trial court made the statutorily required factual finding for the imposition of the maximum sentence and gave its reasons supporting that finding.
 {¶ 77} As for imposing more than the minimum sentence on Hennis as a first time offender, the trial court also made the statutorily required finding when it stated that the shortest term would be demeaning to the seriousness of the offense and would not adequately protect the public. Although the trial court did not give its reasons supporting these findings, R.C. 2929.19 (B)(2) does not require that a court give its reasons for imposing more than the minimum sentence on third degree felonies, such as the ones in this case.
 {¶ 78} However, as for the trial court's imposition of consecutive sentences, the trial court failed to specify what its reasons were that supported its statutory finding that consecutive sentences were necessary to protect the public and punish Hennis. Although the trial court did list several factors from the case that it considered in making its sentencing decision, the trial court did not link those factual events or rationale to the findings it made that were required by the statute. Without a connection between the specific factor or circumstances of this case and the court's statutory findings for imposition of consecutive sentences, we cannot say that the court's list of circumstances it was considering was its reason for the statutorily required findings that it made. Therefore, the trial court did not comply with R.C. 2929.19(B)(2)(c), which required that it state its reasons for making the statutory finding required by R.C. 2929.14(E)(4) when imposing consecutive sentences. Hennis's sixth assignment of error has merit and is sustained. This matter will be remanded to the trial court for resentencing.
 {¶ 79} Appellant's seventh assignment of error:
 {¶ 80} Hennis argues that he was denied a fair trial because the court did not conduct an individual voir dire of a particular juror. We disagree.
 {¶ 81} Hennis argues in his appellate brief that he was denied due process and a fair trial because "the Prosecutor called it to the Court's attention that one of the jurors had a daughter who had been sexually molested. Apparently, the juror did not reveal the information before the trial." However, this is a misstatement of the conversation between the prosecutor and the court. In actuality, towards the end of the trial, the prosecutor informed the court that in regard to juror number three a possibility arose that the juror's son was either prosecuted or accused of a child abuse crime. (Tr. 379). The State was concerned about the situation because it feared the juror would be biased in favor of someone accused of committing sexual abuse. The court determined that the State had waived any opportunity to question the juror and that the jury had been accepted.
 {¶ 82} This situation could have in no way hurt Hennis or deprived him of the right to a fair trial. If anything, this juror may have been biased in favor of Hennis. Hennis's argument in support of this assignment of error is without merit as it is based upon an incorrect factual scenario. This assignment of error is overruled.
 {¶ 83} Appellant's fourth assignment of error:
 {¶ 84} Hennis argues that his conviction was against the manifest weight of the evidence and was not supported by a sufficiency of the evidence. We disagree.
 {¶ 85} In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state had proven the essential elements of the crime beyond a reasonable doubt. See State v. Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 86} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra at 175.
 {¶ 87} In the instant case, the State presented the testimony of M. in which she told of how she had suffered years of sexual abuse at Hennis's hands beginning when she was approximately eight years old and continuing through her junior year in high school. M. testified how the abuse had progressed from rubbing and fondling to oral sex and vaginal and anal intercourse. Moreover, the State presented an audio tape in which M. confronted Hennis about the sexual abuse. In the tape, Hennis admitted to anal intercourse with M. Moreover, in Hennis's testimony he admitted that on one occasion he had oral sex and vaginal and anal intercourse with M. Having reviewed the record and the evidence presented, we find that a reasonable juror when viewing the evidence in a light most favorable to the State could have found that all of the essential elements of the crime had been proven beyond a reasonable doubt. Thus, Hennis's conviction is supported by a sufficiency of the evidence. Additionally, we do not believe that the jury committed a manifest miscarriage of justice in convicting Hennis. The State presented substantial evidence of Hennis's guilt and the jury was free to find Hennis was not credible in his testimony and his claims that M. came on to him. Hennis's conviction was not against the manifest weight of the evidence. The fourth assignment of error is without merit and is overruled.
 {¶ 88} Appellant's eighth assignment of error:
 {¶ 89} Hennis argues that all of the errors committed during the course of the trial when combined operated to deprive him of a fair trial. We disagree.
 {¶ 90} The only errors that Hennis raised that we agree were errors are the court's errors in sentencing, which will be remedied by our remand for re-sentencing, and possibly admitting testimony on a medical report prepared by another may have amounted to hearsay. However, even if the testimony was hearsay and erroneously admitted, this error did not operate to deprive Hennis of a fair trial. As we stated earlier, this testimony did not help to prove any element of the State's case. The testimony regarding the medical report merely stated that M.'s exam was normal and did not indicate evidence of sexual abuse. This was not detrimental to Hennis. Therefore, Hennis was not denied his right to a fair trial by the cumulative errors that occurred at trial. Hennis's eighth assignment of error is without merit and is overruled.
 {¶ 91} The judgment of the trial court is affirmed in part and reversed in part. This case is remanded to the trial court for re-sentencing.
Brogan, J. and Grady, J., concur.