[Cite as *State v. James*, 2016-Ohio-7262.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

MARK A. JAMES,

    DEFENDANT-APPELLANT.

CASE NO. 5-16-14

O P I N I O N

Appeal from Hancock County Common Pleas Court
Trial Court No. 2015-CR-00032

Judgment Affirmed

Date of Decision:  October 11, 2016

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Mark C. Miller* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Mark James ("James") appeals the judgment of the Court of Common Pleas of Hancock County for denying his motion to suppress. For the reasons set forth below, the judgment of the lower court is affirmed.

{¶2} In January 2015, the Findlay Police Department and METRICH Drug Task Force initiated an investigation of James for drug trafficking. Over the course of this investigation, law enforcement monitored three controlled buys of illegal drugs from James. This process began when a confidential informant ("CI") contacted Detective Marcia Hill ("Hill") with information about James's drug related activities. Tr. 57. The CI then agreed to participate in a controlled buy of drugs from James. *Id.*

{¶3} On January 26, 2015, Hill fitted the CI with both audio and video recorders at a predetermined location. Tr. 56. The audio recorder was also a transmitter that police could monitor during the controlled buy. Tr. 59. The video recorder, however, did not have a transmitter, and the police could not view the video images during the course of the operation. Tr. 59-60. Hill drove the CI to James's apartment complex and watched the CI walk to the apartment building. The CI knocked on James's door. James then opened the door and let the CI inside. The CI handed James $100 in prerecorded funds, and James gave the CI a packet that contained 0.33 grams of heroin. Tr. 69. The CI then left the apartment and returned to the predetermined location with Hill. Tr. 63.

{¶4} On January 27, 2015, Hill oversaw another controlled buy of heroin between the CI and James. Tr. 69. Again, Hill and the CI met at a predetermined location where the CI was fitted with both audio and video recording devices. Tr. 70. They drove to the apartment, and the CI walked into the apartment wherein the CI obtained 0.27 grams of heroin from James in exchange for $100 in prerecorded funds. Tr. 75. This time, however, the video camera equipment malfunctioned and failed to record the transaction. Hill was still able to hear the transaction over the audio transmitter. Tr. 74.

{¶5} The final controlled buy occurred on February 3, 2015. Tr. 75. Hill and the CI generally followed the same pattern as in the previous two operations. After reaching the apartment complex with Hill, the CI entered into James's apartment. Tr. 77. The CI went into the back bedroom where James opened an eyeglass case filled with packets. *Id.* He instructed the CI to select a couple, which the CI promptly did. *Id.* The CI then gave James $200 in prerecorded funds and left the apartment. Tr. 75. Altogether, the CI was in the apartment for 2½ to 3 minutes and returned to Hill with 0.45 grams of heroin. Tr. 78. After the transaction occurred, Hill viewed these events on the video recording device. Tr. 77.

{¶6} On the basis of these three transactions, Hill obtained a warrant to search James's apartment for contraband. Tr. 82. Law enforcement executed this warrant on February 4, 2015, and found heroin, cocaine, and other drug paraphernalia in his apartment. Tr. 83. James was indicted with three counts of

heroin trafficking under R.C. 2925.03(A) and one count of heroin possession under R.C. 2925.11(A). Doc. 1.

{¶7} The defense submitted a motion to suppress the evidence discovered pursuant to the warrant. Doc. 49. The motion argued that the use of a covert video camera inside of James's apartment by a confidential informant was a warrantless search of a home and, therefore, a Fourth Amendment violation. *Id.* The trial court orally denied the motion to suppress on September 25, 2016. As part of a plea bargain, the first three counts of drug trafficking were dropped, and James pled no contest to the possession of heroin charge. Doc. 83. The trial court imposed a seven-year prison term on November 12, 2015. Doc. 84. James now appeals the trial court's decision to overrule the motion to suppress on Fourth Amendment grounds and raises the following assignment of error.

> **The trial court erred by not suppressing the fruits of a warrantless search of Mr. James's residence, thereby denying to Mr. James his right to freedom from unreasonable searches and seizures as guaranteed to him by both the United States Constitution and the Ohio Constitution.**

James asserts that the three controlled buys constituted a warrantless search of his residence because law enforcement used a covert video recorder during their operations. Since these controlled buys formed the probable cause supporting the search warrant, James asserts that the trial court erred by not suppressing the fruits of the search of his residence.

{¶8} On appeal, review of a trial court's judgment on a motion to suppress is "a mixed question of law and fact." *State v. Fittro*, 3d Dist. Marion No. 9-14-19, 2015-Ohio-1884, ¶ 11.

> **When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.**

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶9} The Fourth Amendment protects the right of people to be free from unreasonable searches and seizures in their homes. The Ohio Constitution reiterates this guarantee and has been applied as providing the same level of protection as the United States Constitution. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11 citing *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). Warrantless searches of a home are "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.C.t 1652, 1656, 80 L.Ed.2d 85 (1984). If the defense shows a warrantless search

occurred, the state bears the burden of proving the search was legal. *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1998).

{¶10} No reasonable expectation of privacy, however, exists where an individual willingly exposes criminal wrongdoing to another person. *State v. Geraldo*, 68 Ohio St.2d 120, 122-123 429 N.E.2d 141, 144 22 O.O.3d 366 (1981) citing *Hoffa v. United States*, 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966). In choosing to reveal wrongdoing, an individual assumes the risk that their associate may violate their confidence and report the illegal conduct. *Id.* The wrongdoer also assumes the risk that their associate could be a government agent or confidential informant. *United States v. White*, 401 U.S. 745, 749, 91 S.Ct. 1122, 1125, 28 L.Ed.2d 453 (1971) citing *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).

{¶11} When the associate is a government agent, no Fourth Amendment protection exists for revelations of wrongdoing even if the "the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence." *Id.* citing *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).

> **"If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks."**

*Geraldo*, supra at 122.

{¶12} Questions exist over whether covert video recordings are similarly permissible in this type of situation under the Fourth Amendment. In *State v. Taylor*, a case very similar to the one before this court, the defendant invited a confidential informant into his home on three separate occasions. *State v. Taylor*, 4th Dist. Lawrence No. 15CA12, 2016-Ohio-2781. The confidential informant was outfitted with covert video and audio recording devices that captured the three controlled buys of illegal narcotics inside the defendant's home. *Id.* at ¶ 5. On the basis of these controlled buys, police obtained a search warrant of the defendant's home and discovered contraband. *Id.* at ¶ 6. On appeal, the defendant argued that the covert video and audio recording of the interior of his home by a confidential informant was an illegal search. *Id.* at ¶ 34. The Fourth District found "the wrongdoer has no reasonable expectation of privacy in what he openly reveals to a supposed accomplice." Since the defendant "invited the confidential informant into his house—her presence was with his knowledge and consent." *Id.* at ¶ 38. Therefore, no search occurred and no warrant was required. *Id.*

{¶13} In this case, James argues that the use of a covert video recording device within a home constitutes a search that requires a warrant.[1] In this situation, the residential setting of these illegal activities does not afford James the heightened

---

[1] The simultaneous transmission of a video recording is not at issue in the present case. While the CI's equipment was capable of both audio recording and audio transmission, it was only capable of video recording and not video transmission.

protections typically afforded to private homes because he invited the CI into his apartment and consented to the presence of the CI inside his residence. *Id*. at ¶ 38. The CI was, therefore, in a lawful position within James's apartment. The video camera was fitted to the CI's person with the consent of the CI and only taped the interior of James's residence from the perspective of the CI's legal vantage point. See *United States v. Yang*, 281 F.3d 534, 548 (6th Cir. 2002). The video footage was limited to the duration of the CI's presence in James's apartment. No additional police surveillance of the interior of James's residence occurred prior to the CI's entry or after the CI's departure. After the controlled buy was completed, the police saw video footage that was limited to the places to which the CI was invited and the criminal conduct James knowingly exposed to their confidential informant.

{¶14} Further, the video recording device captured criminal wrongdoing that was revealed by James to a "supposed accomplice." *Taylor* at ¶ 36. As in *Taylor*, *Id*. at ¶ 5, James voluntarily chose to reveal to the CI James's criminal activities on three separate occasions after he invited the CI to enter into his home. Tr. 75. During all three controlled buys, James exchanged illegal drugs for prerecorded funds. *Id*. In the final controlled buy, James even revealed that he hid his stash of illegal drugs in an eyeglasses case stored in his bedroom. Tr. 77. Since "the Fourth Amendment does not protect a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it", James had no reasonable expectation of privacy for the police to infringe upon by capturing his illegal

activities on video. *Taylor.* at ¶ 36 citing *Hoffa*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374.

{¶15} Since the CI was invited into James's apartment, the CI's presence as a confidential informant in his apartment did not infringe upon James's privacy rights. Further, James did not have a reasonable expectation of privacy in his criminal activities, so no search of his apartment occurred. For these reasons, the covert recordings of these three transactions were constitutionally permissible. See *Geraldo* at 22. Accordingly, the assignment of error is overruled.

{¶16} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Hancock County is affirmed.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/hls**