**The STATE of Ohio**

v.

**SHARMA.**

2007-Ohio-5404.]

Court of Common Pleas,
Summit County.

No. CR 06–09–3248.

Decided May 11, 2007.

Margaret Kanellis and Brad Gessner, Summit County Assistant Prosecuting Attorneys, for plaintiff.

Kirk Migdal, for defendant.

JUDY HUNTER, Judge.

{¶ 1} This matter came before the court on defendant's motion to admit polygraph examinations and motion to dismiss. The court has been advised, having reviewed the motions, responses, and oral arguments held in chambers and at hearing. Upon review, the court finds defendant's motion to dismiss not well taken, and it is denied, and defendant's motion to admit polygraph examinations well taken, and it is granted.

## PROCEDURAL HISTORY

{¶ 2} The state has filed an indictment against the defendant, Sahil Sharma, for one count of sexual battery, a third-degree felony. Shortly after the indictment was issued, counsel for defendant and the Summit County Prosecutor's Office explored the use of a stipulated polygraph to assist resolving this matter, but the prosecutor's office subsequently declined to utilize polygraph testing. Defendant has taken three polygraph tests—one before the indictment was filed and two subsequent to the indictment. Defendant has filed three separate motions relating to these polygraph examinations—a motion for discovery, motion to admit polygraph examinations, and a motion to dismiss. As it relates to the motion for discovery, this court granted defendant's request for a list of criminal cases, third-degree-felony sexual offenses and above, in which the Summit County Prosecutor's Office used the services of William Evans as a polygraph expert and/or in which the Prosecutor's Office used a polygraph to resolve a case and/or by stipulation for the years 2005 to present. The state complied with this order.

As it relates to the motion to dismiss and motion to admit polygraph evidence, the court set a hearing for April 2, 2007, with briefing deadlines.

{¶ 3} On April 2, 2007, defendant had three expert witnesses testify—William Evans, Steven Stechschulte, and Dr. Louis Rovner. Four exhibits were admitted into evidence—the polygraph report from Mr. Evans, the polygraph report from Mr. Stechschulte, the polygraph report from Dr. Rovner, and published research article by Dr. Rovner titled "The Accuracy of Physiological Detection of Deception for Subjects with Prior Knowledge." The state cross-examined these witnesses but did not call any witnesses or put on any evidence.

{¶ 4} This matter is now ripe for review.

## BRIEF HISTORY OF POLYGRAPH USAGE IN OHIO

{¶ 5} In the seminal case of *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, the Ohio Supreme Court addressed the *narrow issue* of whether the results of a polygraph examination were admissible into evidence when the defendant, who previously consented by stipulation to the examination, subsequently wished to withdraw his consent prior to trial. The defendant therein filed a motion to suppress the polygraph test results because the results came back unfavorable to his case—indicating that Mr. Souel was deceptive in his response to the polygraph questions.

{¶ 6} In *Souel,* the court analyzed the use of polygraphs for trial, reviewing decisions on the subject in other state jurisdictions, the United States Supreme Court case of *Frye v. United States* (1923), 293 F. 1013, and related learned treatises regarding the reliability and admissibility of polygraphs. Ultimately, the court held that, despite ongoing controversy concerning the degree of accuracy of the polygraph device, the polygraphs should be admissible into evidence at trial for purposes of corroboration or impeachment provided that the following safeguards were met:

{¶ 7} "(1) The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

{¶ 8} "(2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

{¶ 9} "(3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:

{¶ 10} "(a) the examiner's qualifications and training;

{¶ 11} "(b) the conditions under which the test was administered;

{¶ 12} "(c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and,

{¶ 13} "(d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

{¶ 14} "(4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given." *Souel,* 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, paragraph one of the syllabus (adopting the polygraph-testing safeguards found in *State v. Valdez* (1962), 91 Ariz. 274, 371 P.2d 894).

{¶ 15} Significantly, the Ohio Supreme Court stated:

{¶ 16} "Despite the ongoing controversy concerning the degree of accuracy of the polygraph device, it is our opinion that observance of the *Valdez* qualifications establishes a proper foundation for the admission of polygraph test results, and that these results have probative value in the determination of whether the examinee has been deceptive during interrogation. We note with approval the sentiments expressed by the Supreme Court of Wyoming in *Cullin v. State* [ (Wyo.1977), 565 P.2d 445], supra, a very recent decision on the precise issue *sub judice,* wherein the following appears at page 458:

{¶ 17} " *'We see no reason why the polygraph expert should be treated in any more restrictive manner than other experts. That the polygraph deals with mind and body reactions should not subject it to exclusion from consideration any more than other testimony of a scientific nature.* We have long utilized the expertise of psychiatrists and psychologists to furnish advice and assistance to the jury to explore the mysteries of the mind with respect to mental illness as a defense. Medical doctors are regularly called upon to testify as to the intricate workings of the body in sensitive questions of a complex physical condition or cause of death. It is the normal obligation of the trial judge to protect the jurors from exposure to evidence which might mislead them, regardless of whatever kind of scientific evidence is under scrutiny. The device of cross-examination soon smokes out the inept, the unlearned, the inadequate self-styled expert.' " (Emphasis added.) *Souel,* 53 Ohio St.2d at 133–134, 7 O.O.3d 207, 372 N.E.2d 1318.

{¶ 18} Based upon the above rationale, the Ohio Supreme Court held that under the circumstances of that particular case the trial court did not err in

admitting the polygraph test results into evidence and the expert opinion relating to said results. Id. at 134, 7 O.O.3d 207, 372 N.E.2d 1318.

{¶ 19} The very next year, the Ohio Supreme Court held in *State v. Levert* (1979), 58 Ohio St.2d 213, 215, 12 O.O.3d 204, 389 N.E.2d 848, that the exclusion of the polygraph expert's testimony at trial did not violate the defendant's Sixth Amendment due-process rights, but stated that "we are unconvinced that a departure from the safeguards enumerated in *Souel* is required or would be wise *at this time*." (Emphasis added.)

{¶ 20} In 1991, the Ohio Supreme Court in *State v. Davis* (1991), 62 Ohio St.3d 326, 581 N.E.2d 1362, declined to expand *Souel* to require the state, through discovery, to produce the results of polygraph examinations administered to three state witnesses under Crim.R. 16(B)(1)(d). Although the *Davis* court upheld *Souel* as it relates to the admissibility of polygraph results when the parties enter into a stipulation, it did state that "[t]he nature of polygraphs is different from traditional scientific tests. Most, if not all, scientific tests involve objective measurements, such as blood or genetic typing or gunshot residue. In a polygraph test, the bodily response of the examinee to his answers is dependent upon the subjective interpretation thereof by the examiner. Inasmuch as the test is not perceived by the profession to be reasonably reliable, its admissibility is limited in Ohio to situations where the parties stipulate to its admission." *Davis*, 62 Ohio St.3d at 341, 581 N.E.2d 1362. This court notes that the aforementioned statement concerning the reliability of polygraph tests is somewhat inconsistent with the *Souel* decision. In *Souel,* the Supreme Court found that polygraph experts should be treated the same as any other expert. In *Davis,* the Supreme Court found that polygraph tests are not reasonably reliable, due to the subjective readings of the polygraph examiners.

{¶ 21} The Ninth District Court of Appeals has followed the *Souel* decision regarding the requirement that both parties stipulate to the polygraph examination prior to its introduction at trial. In *State v. Roper,* Summit App. No. 22566, 2005-Ohio-6327, 2005 WL 3190966, the Ninth District held that it was not an abuse of discretion for the trial court to deny the defendant's request that his unstipulated polygraph test results be admitted into evidence, especially when the jury found the defendant not guilty on both charges of rape. Id. at ¶ 23. The Ninth District recently opined further regarding unstipulated polygraphs. In *State v. Dunlap,* Lorain App. No. 06CA008986, 2007-Ohio-1624, 2007 WL 1039250, the court found that there was no ineffective-assistance-of-counsel claim for the failure to obtain and use polygraph test results when the record does not indicate that a stipulation was ever entered into regarding a polygraph examination. Id. at ¶ 6–7.

{¶ 22} This court notes that the Ohio Supreme Court has not directly read-dressed the issue of the reliability and relevancy of polygraph tests since it issued the *Souel* and *Davis* ruling in 1978 and 1991 respectively. Both *Souel* and *Davis* predate Ohio's adoption of the *Daubert* test (*Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469) regarding the reliability and relevancy of proffered scientific evidence. *Souel* and *Davis* also predate the amended version of the Ohio Rules of Evidence and Evid.R. 702 (eff. July 1, 1994). Thus, the Ohio Supreme Court has not addressed the reliability and admissibility of polygraph test results for its use at trial under the *Daubert* test and Evid.R. 702.

{¶ 23} Evid.R. 702, as amended July 1, 1994, states:

{¶ 24} "A witness may testify as an expert if all of the following apply:

{¶ 25} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 26} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 27} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 28} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

{¶ 29} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 30} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 31} Upon review, the court finds that in the case at hand, the reliability of the polygraph tests administered and expertise of the three examiners interpreting the results warrant their admissibility herein. As it relates to Evid.R. 702(A), little doubt exists that the use of polygraph tests and the interpretation of the test results relate to matters beyond the knowledge or experience possessed by laypersons (or dispels a misconception common among laypersons). Polygraph tests, just as DNA tests, ballistic tests, fingerprint analysis, and handwriting analysis all are science-related matters beyond the knowledge of a layperson. To hold otherwise would mean that polygraph results could be admitted without the

necessity of putting the examiner on the stand at trial—i.e., with no testimony as to the manner in which the test was performed and the results were interpreted, and without testimony concerning the qualifications of the examiner.

█ {¶ 32} As it relates to Evid.R. 702(B), the court finds that the witnesses William Evans, Steven Stechschulte, and Dr. Louis Rovner are all qualified to testify regarding the implementation of the individual polygraphs and test results. Although the state has not challenged the qualifications of these three individuals, this court independently finds that they all have specialized knowledge, skill, experience, training, and education regarding polygraph testing.

{¶ 33} William Evans is a graduate of the National Training Center of Polygraph Science in 1977 and has received postgraduate training in computerized polygraph testing with the Department of Defense in 1995 and postconviction-sex-offender testing with the Maryland Institute of Criminal Justice in 2001. Mr. Evans has lectured statewide and nationally on numerous topics related to polygraphs, including at the National Training Center of Polygraph Science of the American Association of Police Polygraphists and has written articles relative to polygraphs for the Ohio Police Chief Magazine and for the criminal law sections of the Akron Bar Association and Cuyahoga County Bar Association. He has spent the last 30 years providing polygraph services for local law-enforcement agencies, local prosecutors' offices (including the Summit County Prosecutor's Office), the Ohio Attorney General's Office, and for private defense counsel. Mr. Evans has conducted thousands of polygraph examinations. This court further notes that the Summit County Prosecutor's Office has used him on numerous occasions for investigatory purposes and by stipulation. Furthermore, on at least one occasion since 2005, the state used Mr. Evans to perform polygraph tests for a third-degree-felony sexual offense or above to resolve a case by stipulation—*State v. Bradshaw*, CR 04–05–1797.

{¶ 34} Steven Stechschulte is a graduate from the National Training Center of Polygraph Science in 1993. He completed his internship with the Ohio Attorney General's Office at its Bureau of Criminal Identification ("B.C.I.") locations in London, Freemont, and Bowling Green, Ohio. Subsequent to receiving his certification, Mr. Stechschulte became employed full time as a B.C.I. polygraph examiner for the next 12 1/2 years. Since February 2006, Mr. Stechschulte has been in private practice. Mr. Stechschulte is a member of the Ohio Association of Polygraph Examiners and served two years as its president, two years as vice-president, and two years as chairman of the board of directors. He is also a member of the American Association of Police Polygraphists and is certified by the National Training Center of Polygraph Science, the Ohio Association of Polygraph Examiners, and the Ohio Association of Polygraph Examiners. He has performed over 2,700 criminal polygraphs while employed by the B.C.I. and

approximately 40 to 45 criminal polygraph tests while in private practice. He has also performed 33 postconviction tests of sexual offenders for the Lucas County Probation Department.

{¶ 35} Dr. Rovner is a 1986 graduate of the Los Angeles Institute of Polygraph. Dr. Rovner has a doctorate in psychology with a specialty in psychophysiology, a masters degree specializing in biopsychology. He has been an instructor more than 20 years in psychology and statistic courses at the University of Utah, California Lutheran University, and Westminster College. He has taught psychology, physiology, and psychophysiology at the Los Angeles Institute of Polygraph. He is currently an instructor at the Marston Polygraph Academy in San Bernadino, California. He is also guest lecturer at numerous schools and at private and organizational seminars. He has also published articles on polygraph issues, including on the subject of polygraph accuracy. He is a member of the American Psychological Association, the Society for Psycho-physiological Research, and the American Psychology Law Society and is on the panel of experts for the Superior Court of Los Angeles.

{¶ 36} Upon review, this court finds that Mr. Evans, Mr. Steven Stechschulte, and Dr. Louis Rovner are all eminently qualified as experts in the field of polygraph testing based upon their individual knowledge, skill, experience, training, and education.

{¶ 37} As it relates to Evid.R. 702(C), the court finds that polygraph testing is reliable as a scientific test and procedure. Dr. Rovner testified that his doctoral thesis was on the validity of the use of the Utah Zone Comparison Polygraph Test to determine a participant's truthfulness. This two-year controlled study was presented to the Society for Psycho-physiological Research in 1979 and published in the Journal of Polygraph for the American Polygraph Association. Based upon this objective study, the overall accuracy for polygraphs was 95.5 percent for the standard noninformational group (no prior knowledge of polygraph testing procedures), 95.5 percent for the informational group (knowledge of polygraph testing procedures), and 71 percent for the informational practice group (knowledge of polygraph testing procedures and previous experience in taking polygraphs).[1]

{¶ 38} Dr. Rovner further testified that the results of his study are consistent with subsequent studies on the subject. In fact, he indicated that his testing procedures and results were recently replicated in a new study that is to appear in the Journal of British Psychological Society later this year.

---

1. See Rovner Transcript pages 171 through 177 for a detailed discussion of his controlled study, the test results, and false-positive and false-negative error rates.

{¶ 39} Dr. Rovner indicated that in 2003 the National Academy of Sciences commissioned a governmental study of its peers as to the accuracy rate for polygraph tests. The study indicated an average accuracy rate of 86 percent for laboratory research and an average accuracy rate of 89 percent for field research. Another study by the Department of Defense indicated an 86 percent accuracy rate overall for polygraphs.

{¶ 40} Dr. Rovner also testified that polygraphs are generally accepted within the scientific and psychological community. In mid 1980, the Gallup Organization surveyed the members from Society for Psychological Research regarding the acceptance rate for polygraph tests. The survey indicated an 83 percent approval rating for polygraph tests as a viable and valid technique. A second survey was done in mid 1990 duplicating the 83 percent acceptance rate.

{¶ 41} Dr. Rovner also indicated that polygraphs are used on a regular basis throughout the United States and the world. In fact, he indicated that in the United States, polygraphs are used by the Department of Defense, the FBI, CIA, NSA, DEA, and Secret Service; all branches of the military; and numerous state and local law-enforcement agencies in Ohio and throughout the country. He estimated that the annual budget for the Department of Defense for polygraph testing alone is approximately $50 million.

{¶ 42} William Evans, Steven Stechschulte, and Dr. Louis Rovner independently conducted polygraph tests on the defendant. Mr. Evans and Mr. Stechschulte performed different variations of the Modified General Question Test ("MGQT") on Mr. Sharma. Dr. Rovner performed the Utah Zone of Comparison Test. The MGQT and Utah Test are similar in their implementation, except they use a different order of questions asked of the participant. Both tests are widely used in the polygraph community. All three polygraphists used the most advanced computerized polygraph machines. All three individuals independently found that Mr. Sharma was not being deceitful during the examination concerning questions asked.[2] Both Mr. Evans and Mr. Stechschulte had their polygraph tests independently peer-reviewed prior to issuing a final report. Lastly, all three believed that Mr. Sharma did not use any countermeasures to skew the test results and further, that the fact that he had more than one polygraph test did not have an adverse effect on the test results. Concerning the contention that the defendant may have been overtested, both Mr. Evans and Dr. Rovner were of the opinion that multiple testing posed no legitimate concern. Based upon the testimony at hearing, this court finds that their individual polygraph tests are

---

**2.** Dr. Rovner noted that even if all three polygraph tests had a ten percent error rate, the probability that all three examiners made the exact same mistake is probably one out of one thousand.

based on reliable scientific, technical, or other specialized information in accordance with Evid.R. 702(C).

{¶ 43} Upon review, this court finds that significant advancements have occurred concerning the reliability and relevancy of polygraph tests since 1991. The United States Supreme Court has suggested such advancements in the court's concurring opinion in the case of *United States v. Scheffer* (1998), 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413. In Justice Kennedy's concurring opinion, joined by Justices O'Connor, Ginsberg, and Breyer, he noted the tension between Justice Thomas's majority opinion (upholding the per se exclusion of polygraph test results under military law) and the concurring opinion (finding the per se exclusion is not so arbitrary or disproportionate that it is unconstitutional), but stated that the military's per se exclusion was not probably wise at this time, and implied that a subsequent case may arise that would warrant overturning the per se exclusion in favor of permitting the various courts and jurisdictions to determine whether polygraph evidence should be admitted at trial. *Scheffer*, 523 U.S. at 318, 118 S.Ct. 1261, 140 L.Ed.2d 413.[3]

{¶ 44} Regarding the admissibility of polygraph tests at trial under federal law, not in the military setting, Justice Thomas recognized the divergence of opinion and noted that two of the circuit courts have abandoned the per se exclusionary rule as it relates to federal, nonmilitary law, and replaced it in favor of leaving its admission or exclusion to the discretion of the district courts under the *Daubert* test—namely, the Fifth Circuit Court of Appeals in *United States v. Posado* (C.A.5, 1995), 57 F.3d 428, 434, and the Ninth Circuit Court of Appeals in *United States v. Cordoba* (C.A.9, 1997), 104 F.3d 225. *Scheffer*, 523 U.S. at 311, 118 S.Ct. 1261, 140 L.Ed.2d 413.

{¶ 45} This court notes that the Summit County Prosecutor's Office routinely uses polygraphs as a means to clear defendants after indictment. In fact, one of the top five reasons for the prosecutor's office dismissing an indictment during the year 2004 was because the polygraph or other test result cleared the defendant (Summit County Prosecutor's Newsletter, October 2004). Furthermore, the prosecutor's office has used polygraphs as a means to resolve at least two sexual-offense cases since 2005. Thus the prosecutor's office regularly relies on the test to resolve certain cases. In doing so, the office apparently accepts the validity and reliability of the polygraph test process. Yet, in other cases, perhaps for policy or strategic reasons, the prosecutor's office chooses not to utilize a

---

3. Justice Stevens, in his dissenting opinion, stated more emphatically that in recent years polygraph testing has gained increased acceptance as a useful and reliable tool, and that the Confrontation Clause of the Sixth Amendment and Due Process Clause of the Fourteenth Amendment are fundamentally more important than the military's reasons for finding polygraph's unreliable. *Scheffer*, 523 U.S. at 322–326, 118 S.Ct. 1261, 140 L.Ed.2d 413.

polygraph test. Such is the situation in the case herein, even when one of the defendant's polygraph examiners is regularly used by the state for testing. Currently, under the holding in *Souel*, the prosecutor's office has the right to refuse to stipulate to a polygraph test. This unfettered discretion gives the prosecutor the ability to pick and choose in which case a polygraph will be utilized. On the other hand, a defendant who wishes to utilize polygraph test results has limited choice and cannot present expert polygraph evidence in his defense unless the state consents.

■ {¶ 46} Given the advancements in polygraph technology since 1978, this court finds that the Sixth Amendment and Fourteenth Amendment warrant the admission of nonstipulated polygraph evidence in this limited situation in which the trial court has independently found that the proffered polygraph is reliable under Evid.R. 702 and only when the polygraphist is subject to cross-examination and where limited jury instructions are utilized, as required by *Souel*. Rovner succinctly stated—"Polygraph instruments have become far better at measuring and recording physiological responses. * * * Our knowledge of how to structure and conduct a polygraph test, our knowledge of how to evaluate the results of a polygraph test, and our knowledge of how to estimate accuracy is light years beyond what it was in 1978."

{¶ 47} The court in *Souel*, 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, cites the variable skill of the polygraph examiner as a major reason to object to polygraph evidence. In the instant case however, that concern is alleviated by the demonstrated expertise of the defendant's three experts as described herein-above, including Mr. Evans, regularly used by the state for polygraph testing. The court in *Davis*, 62 Ohio St.3d 326, 581 N.E.2d 1362, was concerned that the polygraph examination was open to subjective interpretation. In the instant case however, the defendant's three expert all conclusively determined that Mr. Sharma was not deceptive as to their questions. Furthermore, Mr. Evans and Mr. Stechschulte had their polygraph tests peer-reviewed in order to alleviate those concerns.

{¶ 48} Under the unique circumstances of this case, where this court has conducted an evidentiary hearing to evaluate the reliability of the instant polygraph evidence, where all three polygraphists have testified as to the general acceptance of polygraph use and methodology, and where all three testified that the defendant was not being deceptive in his answers to their questions pertain-ing to the charge of sexual battery, this court finds that the polygraph evidence is admissible at trial. Given the quality of the polygraph examiners and the demonstrated reliability of the polygraph evidence, the overall advancements in polygraph testing, and the defendant's right to subpoena witnesses to assist in

presenting a defense, this court finds that the polygraph test results shall be admitted.

{¶ 49} However, this court holds that the polygraph test results are admissible only if the defendant's polygraph experts are subject to cross-examination and, more important, if the defendant first takes the witness stand in his own defense. The court will not allow polygraph evidence containing statements of the defendant unless he also testifies and is subject to cross-examination. Additionally, if the polygraph evidence is admitted, the court will instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime that is charged and that it is for the jury to decide what weight to give to the testimony.

{¶ 50} With this ruling, the court recognizes that it is not following established state precedent regarding the requirement that the parties stipulate concerning the admissibility of the polygraph tests in order to present polygraph evidence at trial. However, based upon the unique circumstances of this case and the great advancements in the technology of polygraph examinations and greater consensus by the scientific community as to its accuracy, this court will admit the polygraph tests and polygraph testimony over the state's objection to its admissibility without prior stipulation.

{¶ 51} Based upon the above ruling on the defendant's motion to admit the unstipulated polygraph test results, the court denies defendant's motion to dismiss this matter under Civ.R. 48(B).

{¶ 52} The final pretrial set for July 31, 2007 at 3:00 P.M. and trial set for August 13, 2007 at 9:00 A.M. are confirmed.

So ordered.