**The STATE of Ohio,**

v.

**BELL, Defendant.**

2008-Ohio-592.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2006 CR 00867.

Decided Jan. 29, 2008.

Donald White, Clermont County Prosecuting Attorney, and David H. Hoffman and Jason E. Nagel, Assistant Prosecuting Attorneys, for plaintiff.

John Paul Rion, Demosthenes Lorandos, and Ashish S. Joshi, for defendant.

RINGLAND, Judge.

{¶ 1} Defendant, Jaysen W. Bell, has filed several motions in limine seeking anticipatory rulings on evidentiary matters. Specifically, defendant requests the exclusion of a recorded telephone conversation between himself and a complaining witness, pornographic images allegedly found on computer hard drives seized from his home, and evidence of e-mails and online chats between himself and an alleged victim. He also requests an evidentiary hearing at which to address the scientific reliability of polygraph examinations in an effort to admit the results of

two favorable polygraph examinations. Defendant filed his motions on December 14, 2007. At the conclusion of oral arguments on January 24, 2008, the court took the issues under advisement.

## FACTUAL BACKGROUND

{¶ 2} Defendant stands accused of one count of rape, three counts each of sexual battery and sexual imposition, and one count of gross sexual imposition stemming from alleged improper sexual conduct involving two foster children, T.T. and T.W., between July 2003 and June 2006.[1] His present motions stem from certain events occurring during the course of the Amelia Police Department's investigation of the children's allegations.[2]

{¶ 3} On August 9, 2006, Amelia police obtained T.W.'s cooperation in placing a controlled telephone call to defendant at his home. Despite the fact that defense counsel had previously informed the police that defendant was represented by counsel and had asked that he not be contacted outside their presence, the police nevertheless monitored, recorded, and transcribed this conversation with T.W.'s consent. Defendant takes issue with these police actions and further asserts that T.W. misled him during their conversation. He specifically points to T.W.'s statement that he was alone during the call and his assurance that he was not "setting Defendant up." Defendant claims that the state's use of the call at trial would violate his Fourth Amendment right to freedom from unreasonable searches and seizures and his Sixth Amendment right to confrontation.

{¶ 4} During the course of their investigation, police obtained a search warrant for computer equipment located in defendant's home.[3] A search of the seized hard drives uncovered stored pornographic images, e-mail messages, and MySpace chat messages. The parties agree that the pornographic images found on the hard drives contain depictions of adult heterosexual and adult male homosexual activities only—no child pornography was found. The state seeks to introduce the images and certain allegedly incriminating e-mail and chat messages between defendant and the complaining witnesses during trial. Defendant disputes the relevancy of this material to the charges against him.

---

1. In the interest of protecting the privacy of the alleged minor victims, the court will refer to them by their initials only.

2. A more complete factual background of the case is set forth in the court's prior decision denying defendant's motion to suppress. See *State v. Bell*, 142 Ohio Misc.2d 72, 2007-Ohio-2629, 870 N.E.2d 1256.

3. Defendant's unsuccessful motion to suppress sought exclusion of all evidence obtained by way of this search warrant. See *State v. Bell*, 142 Ohio Misc.2d 72, 2007-Ohio-2629, 870 N.E.2d 1256.

{¶ 5} As authorities continued to investigate the charges against him, defendant voluntarily submitted to two independent polygraph examinations in an effort to demonstrate his innocence. These examinations apparently returned favorable results. He seeks to have the results of these examinations admitted as evidence tending to disprove the allegations in the indictment and claims that their exclusion would violate his due process rights to call witnesses and present exculpatory evidence in his defense.

## LEGAL ANALYSIS

{¶ 6} "The purpose of a motion in limine is to avoid the injection into the trial, of matters which are irrelevant, inadmissible and prejudicial. * * * It also serves the useful purpose of raising and pointing out before trial, certain evidentiary rulings that the Court may be called upon to make." *State v. Maurer* (1984), 15 Ohio St.3d 239, 259, 15 OBR 379, 473 N.E.2d 768. An order granting or denying a motion in limine is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated. *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 28 OBR 285, 503 N.E.2d 142. Accordingly, the courts decisions on the various issues addressed herein are not final and are subject to review during the conduct of defendants upcoming trial. Each of defendant's motions is addressed separately below.

### A. Defendant's Motion to Exclude Recorded Telephone Conversations Between Himself and an Alleged Victim

{¶ 7} Defendant first seeks to exclude the recorded telephone conversation between himself and T.W. In support of his position, he claims that admitting the recorded conversation at issue—surreptitiously made at the behest of and in the presence of the Amelia Police Department—would violate his Sixth Amendment right of confrontation and his Fourth Amendment right of freedom from unreasonable searches and seizures.

{¶ 8} The court will address each of defendant's arguments in turn. However, it wishes to first address the circumstances surrounding the recorded call and the potential constitutional concerns that arise from them.[4] Defendant states that

---

4. As an aside, the court also notes that any concern that the recorded conversation violates R.C. 2933.52(A) is alleviated by T.W.'s consent to the recording: the prohibition on such interceptions does not apply to "[a] law enforcement officer who intercepts a wire, oral, or electronic communication * * * if one of the parties to the communication has given prior consent to the interception by the officer." R.C. 2933.52(B)(3); see also *State v. Childs* (2000), 88 Ohio St.3d 558, 567, 728 N.E.2d 379 (reviewing analogous former statutes and holding that consent exception requires consent of only one party to intercepted conversation) and *State v. Stalnaker*, Lake App. No.2004–L–100, 2005-Ohio-7042, 2005 WL 3610430 (citing *State v. Geraldo* (1981), 68 Ohio St.2d 120, 22 O.O.3d 366, 429 N.E.2d 141 and stating that "[t]he

the conversation between himself and T.W. occurred on August 9, 2006, approximately a month after he retained counsel. Counsel had previously notified Amelia police of the representation on July 12, 2006, and had specifically requested that officers not contact defendant outside the knowledge and presence of his attorneys. T.W. nonetheless thereafter initiated a telephone call with defendant in the presence of police, potentially implicating defendant's Fifth Amendment's right against self-incrimination and Sixth Amendment right to counsel.

### 1. Fifth Amendment Right to Freedom from Self–Incrimination

{¶ 9} The controlled call at issue potentially implicates defendant's Fifth Amendment right to freedom from self-incrimination. Prior to instances of custodial interrogation, persons must be warned of those basic rights mandated by the United States Supreme Court's seminal decision in *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. The Supreme Court defines "custodial interrogation" as any questioning initiated by law enforcement officers after an individual has been taken into custody or otherwise deprived of his freedom in some significant way. Id.; *Berkemer v. McCarty* (1984), 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317. Failure of law enforcement officials to adhere to the strictures of the Fifth Amendment requires the exclusion of inculpatory statements obtained through the defective procedures.

{¶ 10} It may be persuasively argued that T.W. acted as a police investigator in the present case by seeking to elicit incriminating information from defendant, who was unquestionably a police suspect at the time the controlled call was made. The transcript of the telephone call accompanying defendant's motion reveals that he was never informed of his *Miranda* rights. Notwithstanding the fact that the conversation with defendant was indeed initiated by law enforcement, the Fifth Amendment nonetheless provides an improper vehicle for a suppression of such calls.

{¶ 11} "[T]he scope of * * * *Miranda* interrogations is limited to police custodial interrogations [and] where the accused is 'otherwise deprived of his freedom of action in any significant way.' " *State v. Miller* (Apr. 26, 1993), Stark App. No. CA–8951, 1993 WL 135703, at *2; citing *Miranda*, supra. Ohio appellate courts, including the Twelfth District, uniformly hold that controlled telephone conversations between suspects and agents of the police (including alleged victims of sexual crimes) do not require a reading of *Miranda* rights because the suspects are not in custody and are not deprived of their freedom of

---

consent exception of R.C. 2933.52(B)(3) allows for a 'controlled' phone call, if the police obtain the consent of one of the parties to the communication").

movement or action. See, e.g., *State v. Stout* (1987), 42 Ohio App.3d 38, 40–41, 536 N.E.2d 42; *State v. Frost* (Dec. 21, 1999), Richland App. No. 99–CA–42, 2000 WL 1620, at *2; *State v. Whaley* (Mar. 25, 1997), Jackson App. No. 96CA779, 1997 WL 142711, at *7; *Miller*, supra, at *2; *State v. Peak* (Jan. 16, 1992), Cuyahoga App. No. 59726, 1992 WL 6046, at *7.

{¶ 12} Here, as in these previous cases, defendant was not under arrest when he received the call from T.W. He was not in the presence of police officers. He was not physically restrained in any way, nor was he compelled to speak to T.W. Defendant remained free to end their conversation at any time by simply hanging up the phone and, by the court's reading of the transcript, he believed he was free to do so. See *State v. Gumm* (1995), 73 Ohio St.3d 413, 429, 653 N.E.2d 253. The facts of the present case are simply inconsistent with custodial interrogations, which require the protection *Miranda* provides.

■ {¶ 13} Defendant's status as a suspect regarding the sexual crimes allegedly perpetrated against the minors changes nothing. *Miranda* does not require warnings upon a person's mere suspicion of criminal activity, but *only* upon their custodial interrogation. *Frost*, supra, at *2. Furthermore, Ohio courts have rejected a broad definition of custodial interrogation encompassing all "action[s] 'that the [questioning] officers should know are reasonably likely to induce an incriminating response from the suspect.'" *State v. Bowens*, Summit App. No. 22896, 2006-Ohio-4721, 2006 WL 2614262, at ¶ 6. For these reasons, the Fifth Amendment does not bar admission of the controlled telephone call at issue.

## 2. Sixth Amendment Right to Counsel

■■ {¶ 14} Defendant's request for the presence of counsel during any subsequent police contact may also arguably implicate his fundamental right to counsel under the Sixth Amendment. This right attaches during critical stages of a criminal prosecution that might jeopardize the defendant's right to a fair trial. *State v. Constable*, Clermont App. No. CA2006–12–107, 2007-Ohio-6570, 2007 WL 4295703, at ¶ 26, citing *U.S. v. Wade* (1967), 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149. The right to counsel attaches at the initiation of adversary judicial criminal proceedings, whether by formal charge, preliminary hearing, indictment, information, or arraignment. *State v. Lee* (Jan. 23, 1986), Gallia App. No. 83CA17, 1986 WL 2028, at *13, citing *Kirby v. Illinois* (1972), 406 U.S. 682, 689–690, 92 S.Ct. 1877, 32 L.Ed.2d 411. Once the right to counsel has attached, the defendant's own incriminating statements obtained by the police in the absence of counsel may not constitutionally be used by the prosecution as evidence. *Lee* at *28; *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. Because the state had not yet initiated criminal proceedings against

defendant at the time the controlled call was placed, the court must conclude that defendant's Sixth Amendment right to counsel had not yet attached.

### 3. Sixth Amendment Right of Confrontation

■ {¶ 15} Defendant claims that his statements during the controlled telephone call with T.W. are testimonial in nature and are therefore barred by the Sixth Amendment and the Supreme Court's holding in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. For Confrontation Clause purposes, a testimonial statement includes one made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at paragraph one of the syllabus, citing *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. The rationale for *Crawford* lies in the inherently questionable trustworthiness of testimonial out-of-court statements and the right of the criminal defendant to test such statements through the constitutionally prescribed vehicle of confrontation.

■ {¶ 16} Defendant essentially argues that *he* is the witness who made inadmissible testimonial statements in the case at bar. Application of *Crawford* in such an instance is overly broad and has already been rejected by several Ohio appellate districts. See *State v. Lloyd,* Montgomery App. No. 20220, 2004-Ohio-5813, 2004 WL 2445224; *State v. Hardison,* Summit App. No. 23050, 2007-Ohio-366, 2007 WL 257680; *State v. Ingram,* Franklin App. No. 06AP–984, 2007-Ohio-7136, 2007 WL 4564246. *Crawford* determined that the Confrontation Clause applies *only* to the out-of-court statements of "witnesses," meaning those who "bear testimony" against the accused. *Stahl* at ¶ 15, citing *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354, 158 L.Ed.2d 177. *Crawford* addressed the admissibility of direct police interrogations of third-party witnesses where the defense lacks an opportunity to cross-examine the witnesses. *Crawford,* 541 U.S. at 38, 124 S.Ct. 1354, 158 L.Ed.2d 177. In such cases, the criminal defendant's prevailing right to test the trustworthiness of out-of-court third-party witness statements intended to incriminate him is clear.

{¶ 17} However, when the alleged "witness" is the accused himself, "the Confrontation Clause is simply inapplicable." *Hardison* at ¶ 16, citing *Lloyd* at ¶ 16. Indeed, "[i]f the statements are properly viewed as [defendant's] own, there is no Confrontation Clause issue because [defendant] cannot claim that he was denied the opportunity to confront himself." *State v. Rivera–Carrillo* (Mar. 11, 2002), Butler App. No. CA2001–03–054, 2002 WL 371950, at *17. Unlike circumstances requiring application of *Crawford,* defendant is clearly not a witness bearing testimony against the accused: he is the accused, with no need to

test the trustworthiness of his own out-of-court statements. Therefore, his request to exclude the controlled call on the basis of *Crawford* is misguided.

{¶ 18} To the extent that defendant seeks to apply the Confrontation Clause as a bar the prior statements made by T.W. during the controlled telephone call, his efforts must also fail. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *State v. Kraus,* Warren App. No. 2006–10–114, 2007-Ohio-6027, 2007 WL 3348426, at ¶ 26, citing *Crawford,* 541 U.S. at 59, 124 S.Ct. 1354, 158 L.Ed.2d 177, fn. 9, and *California v. Green* (1970), 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489. Put more simply, so long as a declarant is present at trial to defend or explain his or her prior testimonial statements, the Confrontation Clause permits their admission. In the present case, T.W.'s status as a material witness ensures that defendant's confrontation rights will be observed: he will be present at trial and may be required to defend or explain any statements he made during the recorded conversation.

4. Fourth Amendment Right of Freedom from
Unreasonable Searches and Seizures

{¶ 19} Defendant also claims that the controlled telephone call placed by T.W. at the behest of the Amelia Police Department amounted to a warrantless intrusion into his residence and violated his Fourth Amendment right to be free from unreasonable searches and seizures. In support of his position, defendant correctly observes that citizens enjoy the greatest subjective expectation of privacy in their homes. However, despite his suggestion that states are free to impose greater restrictions upon police activity than the federal government and guarantee their citizens a right to privacy by way of their own constitutions, the Ohio Supreme Court has expressly refused to expand Section 14, Article I of the Ohio Constitution so as to encompass the privacy protection that defendant desires. *State v. Geraldo* (1981), 68 Ohio St.2d 120, 125–126, 22 O.O.3d 366, 429 N.E.2d 141 (finding the reach of the Ohio Constitution co-extensive with the Fourth Amendment with respect to the warrantless monitoring of a consenting informant's telephone conversation). Although *Geraldo* addressed a monitored call between an unassuming defendant and a police informant rather than an unassuming defendant and an alleged victim, this court views this discrepancy as a distinction without a difference: in each instance, the consenting participant functioned as a police agent. Defendant's assertion that the call between himself and T.W. should be excluded on Fourth Amendment grounds is contrary to established Ohio law and must fail.

{¶ 20} For the foregoing reasons, defendant's motion to exclude the controlled telephone call between himself and T.W. is denied.

**B.** Defendant's Motion to Exclude Pornographic Pictures Allegedly Found in Computer Hard Drives Seized from Defendant's Home

{¶ 21} Defendant next requests exclusion of the pornographic images allegedly found in computer hard drives seized from his home. Defendant anticipates that the state will attempt to admit these photos into evidence at trial and objects to their introduction as irrelevant and barred by Evid.R. 403. He also objects to the photos as evidence of other acts, which is barred by Evid.R. 404(B).

{¶ 22} Evid.R. 401 and Evid.R. 402 address the standard of relevancy that applies to evidence sought to be admitted at trial. Evid.R. 401 defines "relevant evidence" as that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In turn, Evid.R. 402 instructs that "[a]ll relevant evidence is admissible, except as otherwise provided by * * * statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio [or] by these rules." By contrast, the rule states that irrelevant evidence is not admissible. Evid.R. 402.

{¶ 23} Evid.R. 403 and 404 deal with the exclusion of otherwise relevant evidence. Even if the offered evidence is relevant, Evid.R. 403 requires its exclusion in the event its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A). At the discretion of the court, relevant evidence may also be excluded if its probative value is substantially outweighed by considerations of undue delay or needless presentation of cumulative evidence. Evid.R. 403(B). Evid.R. 404(B) generally prohibits the admission of other crimes, wrongs, or acts to prove that a person has acted in conformity with his or her demonstrated character. Such evidence may be admitted for other purposes enumerated in the rule: proof of motive, opportunity, intent, plan, preparation, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B).[5]

---

5. {¶ a} When, as here, the evidence would be offered against a criminal defendant, R.C. 2945.59 also applies. Closely resembling Evid.R. 404(B), R.C. 2945.59 states as follows:

{¶ b} In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ c} While there are textual differences between the two provisions, they are not in conflict. See, e.g., *State v. Broom* (1988), 40 Ohio St.3d 277, 281, 533 N.E.2d 682, and *State v. Hutton* (1990), 53 Ohio St.3d 36, 39, 559 N.E.2d 432.

{¶ 24} As a preliminary matter, the court notes that the threshold for admissibility is low. This reflects a judicial policy that favors the admission of relevant evidence for the trier or fact to weigh over preliminary admissibility determinations that prevent relevant evidence from reaching the trier of fact at all. *State v. Morgan* (1986), 31 Ohio App.3d 152, 31 OBR 241, 509 N.E.2d 428. Nevertheless, the court sides with defendant on this issue and would find the photos of adult pornography seized from his computers barred by Evid.R. 403 if offered by the state at trial.

{¶ 25} The forensic summary returned by examiners in the present case and attached to defendant's motion indicates that no child pornography was located on defendants' computers. Only adult pornography was found. Furthermore, the interview transcript of one alleged victim, also attached as an exhibit to defendant's motion, establishes that defendant never showed him any computerized pornography whatsoever.

{¶ 26} At most, defendant's lawful possession of the photos in question may be probative of an interest in homosexual behavior. The photos do not tend to prove the elements of any charged offense or the existence of any prurient interest relating directly to children. "The belief that homosexuals are attracted to * * * children is a baseless stereotype." *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, at ¶ 12, citing *State v. Bates* (Minn.App.1993), 507 N.W.2d 847, 852. The court does believe, however, that the provocative nature of photos depicting male homosexual activity is likely to inflame the jury and unnecessarily confuse the issues at trial. The valid concerns attendant to the state's introduction of the photos would substantially outweigh their weak probative value to the charges against defendant. As a result, the court would bar their admission under Evid.R. 403.

{¶ 27} Defendant also argues for the exclusion of the photos from evidence by way of Evid.R. 404(B). The court once again agrees with defendant's position and would exclude the photos on this basis as well. *Crotts*, identified by the state, is distinguishable from the case at bar on the grounds that the alleged victims were never shown the computerized pornographic images at issue as part of a concerted plan or scheme to "desensitize" them to homosexual relations between men and boys.[6] See *Crotts* at ¶ 20–21. The court also believes that any attempted use of the photos as a connector between preexisting homosexual urges on the part of defendant and the manifestation of these urges in conduct towards the alleged victims would be too tenuous to support admission of the photos as proof of motive or intent. See *State v. Clemons* (1994), 94 Ohio App.3d

---

6. As stated above, testimony from one alleged victim establishes that he never viewed any pornography with defendant.

701, 710–711, 641 N.E.2d 778 (evidence suggesting defendant's general masturbation "problem" insufficient for proof of motive or intent with respect to later actions towards victims).

{¶ 28} The only remaining seemingly logical basis for seeking admission of such photos in the present case would be to establish that defendant's alleged conduct towards the two children conformed to a deviant homosexual character proven by images of adult pornography in his possession. However, the use of character evidence in this manner is precisely what Evid.R. 404(B) and R.C. 2945.59 forbid.

{¶ 29} For the reasons cited above, the court believes that the probative value of the pornographic photos in question would be substantially outweighed by the risk of unfair prejudice to defendant. As a result, the photos would be barred by Evid.R. 403. The court also finds that Evid.R. 404(B) would prevent introduction of the photos, as they tend to prove only that defendant's alleged unlawful actions towards the children conformed to a purported pre-existing sexual deviance. Defendant's motion is therefore granted.

### C. Defendant's Motion to Exclude E–Mails and Online Chats

{¶ 30} Defendant next seeks to exclude evidence of e-mails and online MySpace chats between defendant and T.W. He claims first that the e-mails and chats allegedly found on the computers seized from his home lack any relevance to the offenses alleged under Evid.R. 401. He further claims that the extensive use of acronyms in the e-mails and chats and the incomplete nature of those electronic conversations produced in discovery make them unfairly prejudicial under Evid.R. 403. The state counters that the e-mails and chats are relevant and probative to the charges facing defendant because they contain references to the "Donkey Game," the "Donkey Plan," and "the bear gets the twinkie at midnight," which the state claims were codes used by Defendant for his sexual conduct towards T.W.

{¶ 31} The state represents that T.W. will confirm his knowledge and use of this code language with defendant during his testimony at trial. Assuming the messages indeed reference sexual codes known only to defendant and his alleged victims that will be further developed by the children's testimony, the court would find the messages relevant to the state's task of proving that sexual abuse occurred. Defendant's equal opportunity to address the electronic communications and cross-examine T.W. negates the claimed prejudicial effect.

{¶ 32} Defendant also claims that MySpace chats can be readily edited after the fact from a user's homepage. Furthermore, he points out that while his name may appear on e-mails to T.W., the possibility that someone else used his account to send the messages cannot be foreclosed. Defendant's motion thus

raises another important issue—authentication of those electronic communications offered in printed form during trial.

{¶ 33} Evid.R. 901(A) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." According to the Twelfth District, the evidence necessary to support this finding is quite low—even lower than the preponderance of the evidence. *Burns v. May* (1999), 133 Ohio App.3d 351, 728 N.E.2d 19. Other jurisdictions characterize documentary evidence as properly authenticated if "a reasonable juror could find in favor of authenticity." See, e.g., *United States v. Tin Yat Chin* (C.A.2, 2004), 371 F.3d 31, 38. Mindful of this low standard, the court finds that T.W. may sufficiently authenticate the electronic communications through testimony that (1) he has knowledge of defendant's e-mail address and MySpace user name, (2) the printouts appear to be accurate records of his electronic conversations with defendant, and (3) the communications contain code words known only to defendant and his alleged victims. In the court's view, this would permit a reasonable juror to conclude that the offered printouts are authentic.

{¶ 34} While Ohio courts have had little opportunity to address the issue at hand, this court views defendant's complaints that the communications at issue are incomplete, easily altered, or possibly from an unidentified third party using his account information as akin to issues involving chain-of-custody disputes. Such issues touch upon concerns regarding the *weight* of given evidence and not its *authenticity*. "When an item is sufficiently authenticated to be admissible, but the chain of custody remains doubtful, the possibility that the exhibit may be misleading is an issue of weight of the evidence." *Hall v. Johnson* (1993), 90 Ohio App.3d 451, 455, 629 N.E.2d 1066, citing *State v. Richey* (1992), 64 Ohio St.3d 353, 360, 595 N.E.2d 915. Other jurisdictions more directly addressing defendant's concerns agree that they present issues of evidentiary weight. *United States v. Tank* (C.A.9, 2000), 200 F.3d 627 (arguably incomplete chat room logs presented issue of weight, not authenticity); *United States v. Catabran* (C.A.9, 1988), 836 F.2d 453, 458 ("[a]ny question as to the accuracy of the printouts * * * would have affected only the weight of the printouts, not their admissibility"); *United States v. Soulard* (C.A.9, 1984), 730 F.2d 1292, 1298 ("[O]nce adequate foundational showings of authenticity and relevancy have been made, the issue of completeness then bears upon the Government's burden of proof and is an issue for the jury to resolve").

{¶ 35} The court believes that evidence of electronic conversations between defendant and the alleged victims would be relevant under Evid.R. 401 and could be authenticated pursuant to Evid.R. 901(A). Upon testimonial development of

the "code language" at issue, the probative value of these messages would outweigh any prejudicial effect. Defendant's motion is denied at this time.

### D. Defendant's Motion to Admit Polygraph Results Tending to Disprove Charges

{¶ 36} Finally, defendant seeks to admit the results of two polygraph examinations. He requests an evidentiary hearing, at which he plans to present testimony from William Fredric Ellerbrake, a polygraph examiner, regarding the scientific basis for the testing and the accuracy of the results, which he claims tend to disprove the allegations in the state's indictment.

{¶ 37} Longstanding Ohio law makes clear that the results of polygraph examinations are generally inadmissible as evidence at trial, regardless of the party seeking to introduce them. Such results are admissible only for corroboration or impeachment purposes, and only where the parties observe certain prescribed conditions. Specifically, the prosecution, defense counsel, and defendant must first sign a written stipulation providing for the defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either the defendant or the state. *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, syllabus. *Souel* contemplates a pre-test stipulation by the prosecutor, the defendant, and his or her counsel. *State v. Hines* (Nov. 19, 1990), Preble App. No. CA90–03–006, 1990 WL 179590, at *2, citing *State v. Jamison* (1990), 49 Ohio St.3d 182, 190, 552 N.E.2d 180. Notwithstanding the parties' agreement as to the polygraph results and accompanying testimony, the court retains the ultimate discretion with respect to their admissibility. Id. If the judge is not convinced that the examiner was qualified or that the test was conducted under proper conditions, he or she may reject such evidence. *Souel,* at syllabus.

{¶ 38} Defendant seeks to admit the favorable results of two polygraph examinations administered during the pendency of this matter. In primary support of his position, he cites *State v. Sharma,* 143 Ohio Misc.2d 27, 2007-Ohio-5404, 875 N.E.2d 1002, a recent Summit County Court of Common Pleas decision. In *Sharma,* the court granted the defendant's request for an evidentiary hearing to qualify polygraph examiners as experts and declared the results sufficiently reliable to permit their admission at trial.[7] Reviewing the Ohio Supreme Court's decisions in *Souel* and *State v. Davis* (1991), 62 Ohio St.3d 326, 581 N.E.2d 1362, the court determined that Ohio's high court had not directly readdressed the reliability and relevancy of polygraph tests since 1991. *Sharma* at ¶ 22. Citing

---

7. Defendant also cites *State v. Sims* (1977), 52 Ohio Misc. 31, 6 O.O.3d 124, 369 N.E.2d 24, which was implicitly overruled by *Souel* four years later.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 and the 1994 amendment to Evid.R. 702 for support, the court departed from established Ohio precedent. See id. at ¶ 22 and 48. Defendant also cites case law from several federal jurisdictions, none of which is binding upon this court. See, e.g., *United States v. Thomas* (C.A.6, 1999), 167 F.3d 299; *United States v. Odom* (C.A.6, 1994), 13 F.3d 949; *United States v. Styles* (C.A.5, 2003), 75 Fed.Appx. 934; *United States v. Posado* (C.A.5, 1995), 57 F.3d 428; *United States v. Prince–Oyibo* (C.A.4, 2003), 320 F.3d 494; *United States v. Lee* (C.A.3, 2003), 315 F.3d 206; *United States v. Kwong* (C.A.2, 1995), 69 F.3d 663; *United States v. Margarian* (C.A.9, 2002), 40 Fed.Appx. 588; *United States v. Crumby* (D.Ariz.1995), 895 F.Supp. 1354; *United States v. Galbreth* (D.N.M.1995), 908 F.Supp. 877.

 {¶ 39} This court respectfully disagrees with both the analysis and decision reached by the Summit County Court of Common Pleas in *Sharma* for several reasons. First, "[t]he syllabus of an Ohio Supreme Court decision states the law of the case and is binding upon all lower Ohio courts." *State v. Kelley,* Delaware App. No. 2006CA00371, 2007-Ohio-6517, 2007 WL 4276866, at ¶ 23, citing *Cassidy v. Glossip* (1967), 12 Ohio St.2d 17, 41 O.O.2d 153, 231 N.E.2d 64, at paragraph six of the syllabus; *Grange Mut. Cas. Co. v. Smith* (1992), 80 Ohio App.3d 426, 431, 609 N.E.2d 585; *Bachus v. Loral Corp.* (Oct. 2, 1991), Summit App. No. 15041, 1991 WL 199906, at *2. Because *Souel* has never been overruled or superseded, its syllabus remains the binding law of the state until the Ohio Supreme Court instructs otherwise.

{¶ 40} In addition, the court observes that the Ohio Supreme Court has reaffirmed its holding in *Souel* as recently as November 2006. "We have not adopted the unrestrained use of polygraph results at trial, and polygraphs themselves remain controversial. Only if there is a stipulation between the parties do we allow the admission of polygraph results at trial, and then only for corroboration or impeachment only." *In re D.S.,* 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, at ¶ 13, citing *Souel.* This court will not presume that the Ohio Supreme Court's failure to expressly harmonize its earlier holdings with *Daubert* and Evid.R. 702 provides lower courts with free reign to abandon the standards first enunciated in *Souel.* Instead, it views the Supreme Court's recent restatement of *Souel*'s holding as proof of their continuing validity.

{¶ 41} Finally, the Twelfth Appellate District stands steadfast with *Souel*'s requirement that all parties must stipulate to the admissibility of polygraph results before testing is conducted. See, e.g., *State v. Barton,* Warren App. No. CA2005–03–036, 2007-Ohio-1099, 2007 WL 731409 (recognizing holding of *Souel*); *State v. Fulton,* Clermont App. No. CA2002–10–085, 2003-Ohio-5432, 2003 WL 22326575 (lack of pre-testing stipulation rendered polygraph testing results

inadmissible); *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police* (2000), 165 L.R.R.M. (BNA) 2107, 2000 WL 628219 (applying *Souel* to arbitration proceeding and finding no error in arbitrator's failure to consider polygraph results); *State v. Hines,* Preble App. No. CA90–03–006, 1990 WL 179590 (rejecting constitutional challenges to polygraph admissibility standards). The Twelfth District has also upheld the rejection of a defendant's request for a *Daubert* hearing to gauge the suitability of polygraph results as evidence. See *Fulton* at ¶ 13. Just as the court is bound by *Souel* itself, it is similarly bound by those Twelfth District decisions interpreting it.

{¶ 42} In the present case, the prosecution did not stipulate to the admissibility of the polygraph results that defendant seeks to offer into evidence before the tests were performed. Consistent with *Souel* and its progeny, which continue to state the law of Ohio, the results of defendant's polygraph tests are inadmissible at trial. The court therefore finds a *Daubert* hearing unnecessary and denies defendant's motion. However, the court will permit defendant to proffer a transcript of the testimony that would have been adduced at the *Daubert* hearing so as to preserve the issue for appeal.

## CONCLUSION

{¶ 43} In sum, the court decides defendant's motions as follows:

- Defendant's motion to exclude the recorded telephone conversation between himself and T.W. is denied.

- Defendant's motion to exclude the images of adult pornography allegedly recovered from the computer hard drives seized from his home is granted. Such images are barred by Evid.R. 403 and 404(B).

- Defendant's motion to admit the results of polygraph examinations and request for an evidentiary hearing are denied in accordance with the Ohio Supreme Court's decision in *State v. Souel.* Defendant may proffer a transcript of the testimony that would have been adduced at the requested hearing so as to preserve the issue for appeal.

- Defendant's motion to exclude e-mails and online chats is denied. The court believes that the electronic communications are relevant to the state's claims and could be authenticated by the testimony of T.W.

{¶ 44} In light of the multitude of evidentiary issues present in this case and the various uses to which certain statements may be put, it is worthy of repeated mention that motions in limine seek only *advisory* rulings. As a result, the court's current decision on any issue addressed herein is not final and is subject to review during the conduct of the upcoming trial. See *State v. Grubb* (1986), 28

Ohio St.3d 199, 203, 28 OBR 285, 503 N.E.2d 142 and *State v. Maurer* (1984), 15 Ohio St.3d 239, 259, 15 OBR 379, 473 N.E.2d 768.

{¶ 45} Should the parties question the propriety of potential testimonial evidence during trial, the court requests that counsel approach the bench for an evidentiary ruling regarding its admissibility and/or the proper scope of its use prior to eliciting it from the witness.

So ordered.